ACCEPTED
01-15-00664-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
11/16/2015 8:21:10 AM
CHRISTOPHER PRINE
CLERK

No. 01-15-00664-CV

In the First Court of Appeals
at Houston, Texas

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
11/16/2015 8:21:10 AM
CHRISTOPHER A. PRINE
Clerk

**Ted B. Lyon, III,** *et al.*,

Apellant(s) and Cross-Appellee(s)

vs.

**Building Galveston, Inc. d/b/a Building Solutions**,

Appellee and Cross-Appellant

Appeal(s) from 405th District Court, Galveston County, Texas
(cause no. 10-CV-2353), Hon. Michelle Slaughter presiding

**Brief for Appellants Ted B. Lyon, III,** *et al.*

CRISS & ROUSSEAU LAW FIRM L.L.P.

Susan E. Criss (06630475)
susan.criss@crissrousseau.com
P.O. Box 17046
Galveston, Texas 77552
Telephone:  409-515-6176
Facsimile:  409-763-1508

TED B. LYON & ASSOCIATES, P.C.

Ben Taylor (19684500)
btaylor@tedlyon.com
Josh Birmingham (24059329)
jbirmingham@tedlyon.com
18601 LBJ Freeway, Suite 525
Mesquite, Texas 75150-5632
Telephone:  972-279-6571
Facsimile:  972-279-3021

counsel for appellants

**Oral Argument Requested**

**Identity of Parties and Counsel**

The appellants are **Ted B. Lyon, III** (hereafter "Mr. Lyon"), and **Lyon Properties & Custom Homes, LLC d/b/a Lyon Construction Services**, more correctly named **Lyon Properties & Custom Homes, L.C.** [5RR85-86; PX38] (hereafter "Lyon Construction" or "Mr. Lyon's company"). CR243-48, 266-270, 271-76, 277-78, 308-314; 1SuppCR98-103.[1] Lyon Construction was the original plaintiff but Mr. Lyon and Lyon Construction eventually became named defendants pursuant to the trial court's order of realignment. CR6-9, 29-32, 96. Mr. Lyon and his company are also cross-appellees in this Court. Mr. Lyon's and his company's trial and appellate counsel are listed on the cover of this brief.[2]

---

[1] The last-in-time judgment rendered by the trial court (second "nunc pro tunc" signed October 13, 2015) denied all relief requested against Lyon Construction; however, Lyon Construction has joined this opening brief (in an abundance of caution) because: (a) the first "nunc pro tunc" (signed July 31, 2015) judgment mistakenly inserted unspecified "findings of fact as requested by" plaintiff Building Galveston, Inc. and mistakenly awarded Building Galveston, Inc. "$15,889.84" against Lyon Construction (*see* CR273, 276; 1SuppCR6-7, 27); and (b) no subsequent order or judgment signed by the trial court expressly vacated, modified or corrected the first "nunc pro tunc" judgment signed on July 31, 2015. *See* 1SuppCR37, 93-94, 96 (10/12/2015 judgment abstract form requested by Building Galveston, Inc.'s counsel naming "Lyon Construction Services" as a "Judgment Debtor" with reference to "Nunc Pro Tunc Order of 7/31/2015"), 103 (last-in-time "nunc pro tunc" judgment signed October 13, 2015, ordering: "This judgment corrects the Judgment of May 19, 2015 . . ."). *Cf. Mullins v. Thomas*, 136 Tex. 215, 217, 150 S.W.2d 83, 84 (1941) (reaffirming "well settled" rule "that the entry of a second judgment in the same case is not a vacation of the first, and that if there is nothing to show the first was vacated, the second is a nullity"), *Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 314 (Tex. 2000) (Rule 329b(h) provides that "[i]f a judgment is modified, corrected or reformed **in any respect**" the appellate timetable runs from the date of the new judgment — whether or not the change is "material or substantial") (italics original).

[2] In obedience to Tex. R. App. P. 38.1(a) and *Tesco American, Inc. v. Strong Industries, Inc.*, 221 S.W.3d 550, 552 & n.3 (Tex. 2006), *rev'g* 129 S.W.3d 606 (Tex. App.--Houston [1st Dist.] 2004), and 129 S.W.3d 594 (Tex. App.--Houston [1st Dist.] 2003) (en banc), Mr. Lyon and

The appellee and cross-appellant is **Building Galveston, Inc. d/b/a Building Solution** (hereafter "Building Galveston" or "BGI").[3]  BGI was originally the intervenor below; however, BGI later became the plaintiff suing Mr. Lyon and his company pursuant to the trial court's order of realignment.  CR12-19, 34-43, 46-55, 96, 106-113, 122.  BGI's trial and appellate counsel is:

Scott Lyford (127153200)
([slyford@millsshirley.com](mailto:slyford@millsshirley.com))
Mills Shirley L.L.P.
P.O. Box 1949 (77553)
2228 Mechanic Street, Suite 400
Galveston, Texas 77550
Telephone:  409-763-2341
Facsimile:  409-763-2879[4]

**Note regarding earlier-dismissed parties:**  No party appealed the trial court's January 2012 orders granting summary judgment on Lyon Construction's claims against Chris Arneson and dismissing (by agreement) Lyon Construction's

---

Lyon Construction state that their counsel in the trial court also included Benjamin P. Barmore (24073076).  *E.g.*, 1RR2.  (Mr. Barmore departed Ted B. Lyon & Associates, P.C., in December 2013 and on information and belief is now with Rad Law Firm, P.C., 2777 Allen Parkway, Suite 1000, Houston, Texas 77019.)

[3]  *See* CR292-93, 299 (Building Galveston, Inc. announcing its intention to appeal the trial court's failure "to enter [*sic*] judgment against the corporate [*sic*] defendant and the failure to award attorney's fees related to the breach of contract damages awarded").

[4]  BGI's counsel in the trial court also included Christopher C. Garcia (24007221).  *E.g.*, CR113. (On information and belief, Mr. Garcia departed Mills Shirley L.L.P. in about July 2015 and is now with Chris Garcia Law Group, P.C., 1207 S. Shepherd, Houston, Texas 77019.)  Andy Soto (24071128) from the Mills Shirley firm also appeared in the trial court for BGI during the post-verdict evidentiary hearing on attorney's fees.  11RR2, 5, 22-24, 30, 49-50, 80-82, 94-95.

claims against Patty Cake Bakery and the Rennicks CR78, 80-81, 333.[5]

Chris Arneson, Patty Cake Bakery, and the Rennicks: (1) did not appear as parties during the November 2013 jury trial (CR96, 339-340; 1RR1-6RR10; 1SuppCR98); (2) are not named as parties in the the trial court's final judgment (1SuppCR98-103); and (3) are not parties to the appeal or cross-appeal now before this Court (CR277-78, 292-93, 299, 312-13). Neither Mr. Lyon (or Lyon Construction) nor Building Galveston is challenging the trial court's January 2012 orders granting summary judgment and/or dismissal in favor of Chris Arneson, Patty Cake Bakeries, and the Rennicks; consequently, those rulings should be affirmed.[6]

---

[5] The record reveals Lyon Construction's claims against Chris Arneson, Patty Cake Bakery, and the Rennicks were never severed from this action; consequently, the January 2012 interlocutory orders in favor of Chris Arneson, Patty Cake Bakery, and the Rennicks became final when the trial court subsequently signed its original final judgment disposing of all parties and claims on May 19, 2015. CR4, 243-48, 271-76. *See Webb v. Jorns*, 488 S.W.2d 407, 408-09 (Tex. 1972); *H.B. Zachry Co. v. Thibodeaux*, 364 S.W.2d 192, 193 (Tex. 1963) (per curiam). The last-in-time judgment signed by the trial court — purportedly nunc pro tunc "AS of 5-19-2015" but before the trial court's period of Rule 329b plenary power ended — included the following order to remove any doubt about finality: "This judgment corrects the Judgment of May 19, 2015, finally disposes of all parties and all claims, and is appealable. Any relief requested by any party not granted herein is hereby DENIED." 1SuppCR103, 98. *See In re Burlington Coat Factory Warehouse, Inc.*, 167 S.W.3d 827, 829-830 (Tex. 2005) (orig. pro.) (reaffirming that language suggested by Justice Hecht for the majority in *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 206 (Tex. 2001), "would clearly indicate finality . . ."); *North East Indep. School Dist. v. Aldridge*, 400 S.W.2d 893, 898 (Tex. 1966) ("Of course, the problem can be eliminated entirely by . . . inclusion in judgments of a simple statement that all relief not expressly granted is denied").

[6] *See*, *e.g.*, *Feith Sys. & Software, Inc. v. Design Info. Sys.*, 813 S.W.2d 481 (Tex. 1991) (per curiam); *accord Black v. Shell Oil Co.*, 397 S.W.2d 877, 889 (Tex. Civ. App.--Texarkana 1965, writ ref'd n.r.e.) ("The portions of the judgment of the trial court which were not appealed from are not disturbed").

# Table of Contents

**Page**

Identity of Parties and Counsel ....................................................................2

Index of Authorities ....................................................................................6

Mr. Lyon's Statement of the Case ..............................................................13

Mr. Lyon's Issues Presented .......................................................................15

Mr. Lyon's Statement of Undisputed Facts in the Record ........................16

Mr. Lyon's Summary of Argument .............................................................18

Mr. Lyon's Arguments and Authorities ......................................................19

I.      The Jury's Fraudulent Lien Findings, in Answer To Question No. 4,
        Lack the Required Support of Legally and Factually Sufficient
        Evidence.............................................................................................19

II.     The Trial Court Abused Its Discretion and Committed Reversible Error
        by Overruling Hearsay Objections and Admitting PX45 into Evidence ......37

III.    BGI's Legally and Factually Insufficient Attorney's Fee Evidence,
        Predicate, and Segregation Independently Require a New Trial ..................45

IV.     BGI Failed In BGI's Burden to Submit an Adequate Jury Question
        Regarding Damages for Mr. Lyon's Alleged Failure to Comply with
        the Subcontract; Consequently, The Trial Court Should Have Granted
        Defendants' Motions for New Trial for This Additional Reason as Well ....52

Conclusion ..................................................................................................57

Certificate of Word Count Compliance .....................................................59

Certificate of Filing and Service ................................................................60

Appendix Items ......................................................................................post

        Jury charge and verdict returned November 12, 2013 (CR123-139)

        Judgment Nunc Pro Tunc signed October 13, 2015 (1SuppCR98-103)

## Index of Authorities

**Page(s)**

**Constitutional Law**

U.S. Const. amend. XIV, § 1 ...............................................................27

**Case Law**

*$56,700 in U.S. Currency v. State*,
730 S.W.2d 659 (Tex. 1987) ......................................................28

*Alanis v. US Bank N.A.*,
No. 01-14-00559-CV (Tex. App.--Houston [1st Dist.]
Nov. 03, 2015, n.p.h.) .................................................................36

*Amegy Bank N.A. v. Brazos M&E, Ltd.* (*In re Bigler LP*),
458 B.R. 345 (Bankr. S.D. Tex. 2011) ................................. 49-50

*Banda v. Garcia*,
955 S.W.2d 270 (Tex. 1997) (per curiam) .................................30

*Black v. Shell Oil Co.*,
397 S.W.2d 877 (Tex. Civ. App.--Texarkana 1965, writ ref'd n.r.e.) ...........4

*Browning-Ferris, Inc. v. Reyna*,
865 S.W.2d 925 (Tex. 1993) .......................................................28

*Casa Linda Tile & Marble Installers, Inc. v. Highlands Place 1981, Ltd.*,
642 So. 2d 766 (Fla. 4th DCA 1994)...........................................24

*Cecil v. Smith*,
804 S.W.2d 509 (Tex. 1991) .......................................................19

*Centurion Planning Corp. v. Seabrook Venture II*,
176 S.W.3d 498 (Tex. App.--Houston [1st Dist.] 2004, no pet.)..................25

*Christus Health Gulf Coast v. Carswell*,
433 S.W.3d 585 (Tex. App.--Houston [1st Dist.] 2013),
*review granted*, 58 Tex. Sup. Ct. J. 1067 (June 12, 2015)
(cause no. 14-0362) (oral arguments heard Nov. 13, 2015)..................... 31-32

*Coalition of Cities v. Public Util. Comm'n*,
798 S.W.2d 560 (Tex. 1990), *cert. denied*, 499 U.S. 983 (1991) ................26

*Contemporary Contractors, Inc. v. Centerpoint Apt. Ltd. P'ship*,
No. 05-13-00614-CV (Tex. App.--Dallas July 3, 2014, no pet.)
(mem. op.).....................................................................................49

*Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*,
  823 S.W.2d 591 (Tex. 1992) ........................................................33

*D&M Marine, Inc. v. Turner*,
  409 S.W.3d 693 (Tex. App.--Houston [1st Dist.] 2013, pet. denied) ...........38

*El Apple I, Ltd. v. Olivas*,
  370 S.W.3d 757 (Tex. 2012) ........................................................38

*Elizondo v. Krist*,
  415 S.W.3d 259 (Tex. 2013) ........................................................40

*El-Khoury v. Kheir*,
  241 S.W.3d 82 (Tex. App.--Houston [1st Dist.] 2007, pet. denied) .............52

*Estrada v. Dillon*,
  44 S.W.3d 558 (Tex. 2001) (per curiam),
  *rev'g in part* 23 S.W.3d 422 (Tex. App.--Amarillo 2000) .........................52

*Feith Sys. & Software, Inc. v. Design Info. Sys.*,
  813 S.W.2d 481 (Tex. 1991) (per curiam) ......................................4

*Gray v. Entis Mechanical Servs., LLC*,
  No. 01-11-00129-CV (Tex. App.--Houston [1st Dist.]
  Apr. 26, 2012, no pet.) (mem. op.) .............................................36

*H.B. Zachry Co. v. Thibodeaux*,
  364 S.W.2d 192 (Tex. 1963) (per curiam) ......................................4

*Haygood v. De Escabedo*,
  356 S.W.3d 390 (Tex. 2012) ........................................................56

*In re Burlington Coat Factory Warehouse, Inc.*,
  167 S.W.3d 827 (Tex. 2005) (orig. pro.).........................................4

*In re Hon. Michelle Slaughter, Presiding Judge of the
  405th Judicial District Court, Galveston County, Texas*,
  Docket No. 15-0001 (Special Court of Review of Texas
  Sep. 30, 2015) (per curiam) ........................................... 23, 24, 27

*In re MetroPCS Commc'ns, Inc.*,
  391 S.W.3d 329 (Tex. App.--Dallas 2013, orig. pro.).................................30

*Jelinek v. Casas*,
  328 S.W.3d 526 (Tex. 2010) ........................................................26

*Joske v. Irvine*,
  91 Tex. 574, 44 S.W. 1059 (1898) ...............................................28

*Kerr-McGee Corp. v. Helton*,
133 S.W.3d 245 (Tex. 2004) ......................................................................45

*Kindred v. Con/Chem, Inc.*,
650 S.W.2d 61 (Tex. 1983) ........................................................................28

*Lane Bank Equip. Co. v. Smith S. Equip., Inc.*,
10 S.W.3d 308 (Tex. 2000) ..........................................................................2

*Larson v. Cook Consultants, Inc.*,
690 S.W.2d 567 (Tex. 1985) ......................................................................20

*Lehmann v. Har-Con Corp.*,
39 S.W.3d 191 (Tex. 2001) ..........................................................................4

*Litton Industrial Products, Inc. v. Gammage*,
668 S.W.2d 319 (Tex. 1984) ......................................................................28

*Lovelace v. Sabine Consolidated, Inc.*,
733 S.W.2d 648 (Tex. App.--Houston [14th Dist.] 1987, writ denied) ........55

*Luna v. North Star Dodge Sales, Inc.*,
667 S.W.2d 115 (Tex. 1984) ......................................................................24

*Mancorp, Inc. v. Culpepper*,
802 S.W.2d 226 (Tex. 1990) ......................................................................20

*Missouri-K.T. R.R. v. McFerrin*,
156 Tex. 69, 291 S.W.2d 931 (1956) .........................................................25

*Mullins v. Thomas*,
136 Tex. 215, 150 S.W.2d 83 (1941) ...........................................................2

*North East Indep. School Dist. v. Aldridge*,
400 S.W.2d 893 (Tex. 1966) ........................................................................4

*Perry Nat'l Bank v. Eidson*,
340 S.W.2d 483 (Tex. 1960) ......................................................................48

*Pool v. Ford Motor Co.*,
715 S.W.2d 629 (Tex. 1986) ......................................................................20

*Price Constr., Inc. v. Castillo*,
147 S.W.3d 431 (Tex. App.--San Antonio 2004),
*pet. denied*, 209 S.W.3d 90 (Tex. 2005) .....................................................32

*R.M. Dudley Constr. Co. v. Dawson*,
258 S.W.3d 694 (Tex. App.--Waco 2008, pet. denied) .......................... 48-49

*Ramos v. Frito Lay, Inc.*,
    784 S.W.2d 667 (Tex. 1990) .........................................................................52

*Saenz v. Fidelity & Guaranty Ins. Underwriters*,
    925 S.W.2d 607 (Tex. 1996) ........................................................................20

*Salomon v. Lesay*,
    369 S.W.3d 540 (Tex. App.--Houston [1st Dist.] 2012, no pet.) .................20

*Sentinel Integrity Solutions, Inc. v. Mistras Group, Inc.*,
    414 S.W.3d 911 (Tex. App.--Houston [1st Dist.] 2013, pet. denied) ...........45

*Spencer v. Eagle Star Ins. Co. of Am.*,
    876 S.W.2d 154 (Tex. 1994) .................................................................. 19, 53

*St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co.*,
    974 S.W.2d 51 (Tex. 1998) (per curiam) ............................................... 24, 34

*Stewart Title Guar. Co. v. Aiello*,
    941 S.W.2d 68 (Tex. 1997) .........................................................................51

*Suarez v. City of Texas City*,
    465 S.W.3d 623 (Tex. 2015),
    *aff'g City of Texas City v. Suarez*, No. 01-12-00848-CV
    (Tex. App.--Houston [1st Dist.] Mar. 7, 2013) (mem. op.)..........................28

*Superior Trucks, Inc. v. Allen*,
    664 S.W.2d 136 (Tex. App.--Houston [1st Dist.] 1983,writ ref'd n.r.e.) .....31

*Tesco American, Inc. v. Strong Industries, Inc.*,
    221 S.W.3d 550 (Tex. 2006),
    *rev'g* 129 S.W.3d 606 (Tex. App.--Houston [1st Dist.] 2004),
    and 129 S.W.3d 594 (Tex. App.--Houston [1st Dist.] 2003) (en banc) ..........2

*Texas & Pac. Ry. Co. v. Van Zandt*,
    159 Tex. 178, 317 S.W.2d 528 (1958) .......................................................56

*Texas Real Estate Comm'n v. Nagle*,
    767 S.W.2d 691 (Tex. 1989) .......................................................................26

*Tony Gullo Motors I, L.P. v. Chapa*,
    212 S.W.3d 299 (Tex. 2006) .......................................................................46

*Trevino v. American Nat'l Ins. Co.*,
    140 Tex. 500, 168 S.W.2d 656 (1943) ........................................................51

*Trinity Drywall Sys., LLC v. TOKA General Contractors, Ltd.*,
    416 S.W.3d 201 (Tex. App.--El Paso 2013, pet. denied).............................48

*U-Haul Int'l, Inc. v. Waldrip*,
   380 S.W.3d 118 (Tex. 2012) ....................................................................48

*Unifund CCR Partners v. Villa*,
   299 S.W.3d 92 (Tex. 2009) (per curiam) ................................................44

*Vinci Dev. Co. v. Connell*,
   509 So. 2d 1128 (Fla. 2d DCA 1987) (per curiam) ................................24

*Vista Chevrolet, Inc. v. Lewis*,
   709 S.W.2d 176 (Tex. 1986) (per curiam) ..............................................26

*W.O. Bankston Nissan, Inc. v. Walters*,
   754 S.W.2d 127 (Tex. 1988) ....................................................................52

*Wal-Mart Stores, Inc. v. Gonzalez*,
   968 S.W.2d 934 (Tex. 1998) ....................................................................28

*Webb v. Jorns*,
   488 S.W.2d 407 (Tex. 1972) ......................................................................4

*West v. State*,
   124 S.W.3d 732 (Tex. App.--Houston [1st Dist] 2010, no pet.) ..............43

**Statutory**

Fla. Stat. Ann. § 713.31(2)(a) ........................................................................24

Tex. Civ. Prac. & Rem. Code § 37.009 ..........................................................48

Tex. Civ. Prac. & Rem. Code § 38.001 ..........................................................47

Tex. Civ. Prac. & Rem. Code Ann.
   § 12.002 (Vernon Supp. 2015) .......................................... 20, 25, 47, 48, 57

Tex. Prop. Code Ann.
   § 53.024 (Vernon 2014)................................................................ 21, 28-31

Tex. Prop. Code Ann.
   § 53.156 (Vernon 2014)................................................................ 47, 48, 51

**Rules**

Tex. R. App. P. 3.1(b) .....................................................................................48

Tex. R. App. P. 33.1(b) .......................................................................... 19, 46, 55

Tex. R. App. P. 33.1(d) ...................................................................................45

Tex. R. App. P. 38.1(a) .....................................................................................2

Tex. R. App. P. 43.2(c), (d) ............................................................................48

Tex. R. App. P. 44.1(b)(1) ................................................................52

Tex. R. Civ. P. 279 ...........................................................................19

Tex. R. Civ. P. 300 ...........................................................................55

Tex. R. Civ. P. 301 .......................................................... 19, 55-56

Tex. R. Civ. P. 324(b)(2) .................................................................19

Tex. R. Civ. P. 329b ......................................................................2, 4

Tex. R. Civ. P. 329b(c) ................................................... 19, 46, 55

Tex. R. Civ. P. 329b(h) ....................................................................2

Tex. R. Evid. 101 .............................................................................44

Tex. R. Evid. 703 .............................................................................40

Tex. R. Evid. 801 ........................................................................ 41, 43

Tex. R. Evid. 802 ..................................................................... 41, 43, 44

Tex. R. Evid. 803 ....................................................................... 41, 42

Tex. R. Evid. 803(6) ...................................................................41-43

Tex. R. Evid. 902(10) .....................................................................42

## Other

ACORD certificate of liability insurance
(TDI approved Feb. 12, 2013) ...............................................33

*American Heritage Dict.* (2nd college ed. 1985) ........................34

*Black's Law Dict.* (5th ed. 1979) ...............................................34

*Fraudulent Construction Liens:  Willful Exaggeration
or Good Faith Dispute*, 75 Fla. B.J. 34 (Mar. 2001) ...................24

http://judgemichelleslaughter.com/justice-prevails/ ............................23

Lawrence Morales II,
*Evidence in A Bench Trial:  Do the Rules Really Matter*,
73 Tex. B.J. 110 (2010) .........................................................44

*Luke* 10:31-32 (King James) .........................................................26

Nathan L. Hecht, *Foreword*:  W. Wendell Hall,
*Revisiting Standards of Review in Civil Appeals*,
24 St. Mary's L.J. 1041 (1993) ...............................................29

Robert W. Calvert,
    ***Appellate Court Judgments*** *or Strange Things Happen on the Way to*
    *Judgment*, 6 Tex. Tech. L. Rev. 915 (1975)...................................................48

W. Wendell Hall, O. Rey Rodriguez, Rosemarie Kanusky & Mark Emery,
    *Hall's Standards of Review in Texas*,
    42 St. Mary's L.J. 3 (2010).................................................................. 19-20

To the Honorable First Court of Appeals:

Mr. Lyon (joined by Lyon Construction) files this brief requesting reversal of the final judgment rendered by Hon. Michelle Slaughter, presiding over the 405th District Court of Galveston County, and respectfully shows:

**Mr. Lyon's Statement of the Case**

Lyon Construction (a subcontractor) commenced this action in August 2010 against Patty Cakes Bakery and the Rennicks (owners of the Patty Cakes Bakery project) seeking to foreclose a claimed $35,697.00 mechanic's and materialman's lien. CR6-9. Building Galveston, Inc. (general contractor for the Patty Cakes Bakery project) (BGI) intervened in April 2011. CR12-19. In November 2013, BGI became designated as the plaintiff, with Lyon Construction and Mr. Lyon being designated as the defendants. CR96; 2RR8.

BGI's third amended petition included (among others) the following alleged causes of action against Mr. Lyon and Lyon Construction: (a) breach of contract; (b) filing of an invalid lien; and (c) filing of a fraudulent lien. CR102, 108-11. BGI's third amended petition also expressly requested a judgment against Mr. Lyon and Lyon Construction for "[e]xemplary damages as awarded by the trier of fact . . . ." CR112.[7] Because BGI wanted to open and conclude both the

---

[7] Appropriately on this record, BGI did not (1) request submission of jury questions on exemplary damages against Mr. Lyon or Lyon Construction, nor (2) ask the trial court to award any exemplary damages to BGI in its final judgment.

presentation of evidence and arguments to the jury, BGI admitted to the trial court that BGI bore "the burden of proof at trial." CR93, 96. The trial court later confirmed on the record an agreement and stipulation between the parties "that attorney's fees would be taken up by a separate motion with the Court and not put to the jury . . . so that will be taken up after the verdict is rendered by the jury." 5RR5-6; 11RR89-90.

After a week-long trial in November 2013, twelve Galveston County jurors unanimously found: (1) Mr. Lyon, individually, and Building Galveston agreed to enter into a subcontract for the construction of the Patty Cakes Bakery; (2) Mr. Lyon failed to comply with his subcontract with Building Galveston; (3) amounts to fairly and reasonably compensate Building Galveston for any damages that resulted from Mr. Lyon's failure to comply; (4) Mr. Lyon made, presented or used a fraudulent lien or claim against real property; and (5) an amount to fairly and reasonably compensate Building Galveston for any damages that resulted from Mr. Lyon presenting or using a fraudulent lien or claim against real property. CR127-131, 138-39.

Mr. Lyon's motion to disregard the jury's answer to Question No. 4 was heard in December 2014 and later "DENIED" on the first page of the trial court's signed final judgment, which went on award BGI: $47,820.59 for actual damages; $9,806.50 in pre-judgment interest; $162,556.42 for attorney's fees through trial

and any unsuccessful appeal by Mr. Lyon to this Court; and additional amounts for any unsuccessful appeal by Mr. Lyon to the Texas Supreme Court. CR141-47, 169-172; 10RR4-21; CR243, 271; 1SuppCR98, 101-03.[8] Mr. Lyon's (and his company's) timely-filed motions for new trial were overruled by operation of law. CR266-270, 308-314; 1SuppCR50-57. Mr. Lyon (and his company) filed timely notice(s) of appeal and made an appropriate cash deposit in lieu of supersedeas bond. CR277-78, 312-13, 315-323, 347; 1SuppCR5. BGI filed its own timely notice of appeal (CR292) and has insisted on parallel briefing tracks.

## Mr. Lyon's Issues Presented

1. Whether the trial court erred by (a) denying Mr. Lyon's motion to disregard the jury's answer to Question No. 4, (b) rendering judgment awarding BGI statutory damages, interest and attorney's fees for fraudulent lien, and (c) denying Mr. Lyon's motions for new trial.

2. Whether the trial court abused its discretion and committed reversible error by overruling defendants' hearsay objections and admitting PX45 during the bench trial on attorney's fees.

---

[8] The first page of all three judgments BGI persuaded the trial court to sign contained an untrue statement that BGI "moved for judgment based on the jury's verdict." 10RR23-24. BGI's September 29, 2014 "motion for judgment" (CR175-76) was **not** a motion for judgment based on the verdict; it also requested breach of subcontract damages not even arguably supported by the jury's answer to Question No. 3. *See* 10RR5-6, 23-29; *see also* CR242 (BGI's "judgment worksheet" filed May 1, 2015); *cf.* CR129 (jury's actual verdict regarding breach of subcontract damages).

3.      Whether the trial court erred by denying defendants' motions for new trial asserting no legally and factually sufficient evidence (or sustainable legal predicate) supports the trial court's excessive findings and awards for trial and appellate attorney's fees.

4.      Whether the trial court erred by rendering judgment for breach of subcontract damages not lawfully supported by the jury's answer to Question No. 3 and by denying defendants' motions for new trial.

## Mr. Lyon's Statement of Undisputed Facts in the Record

BGI (through its owner, Chris Arneson) entered into a December 2009 agreement with the owners of Patty Cake Bakery (the Rennicks) to serve as general contractor for that project with various plans and specifications. 2RR93-95; PX1, 6, 7. BGI entered into (what the trial court ruled was an ambiguous) subcontract agreement signed by Mr. Lyon as "Owner" of Lyon Construction. 2RR70-71, 100; PX2. Later various disputes arose over the completeness and quality of subcontract work performed by (and the remaining amount due) Mr. Lyon; dissatisfied with his efforts, BGI told Mr. Lyon not to come back to the job site and terminated him from the project. 2RR162; 3RR135.

Mr. Lyon proceeded to fax Mr. Arneson and BGI a letter asserting a remaining balance due of $35,697 and explaining how Mr. Lyon calculated that amount. PX14; 2RR164-65. Mr. Arneson testified at trial he thought the $35,697

claimed in Mr. Lyon's demand letter (PX14) was "ridiculously high" but he "really didn't know." 2RR183. In Mr. Arneson's words: "I didn't argue with the fact that he [Mr. Lyon] was demanding money. I argued with the amounts. In fact, I think we [BGI] actually made them [Mr. Lyon / Lyon Construction] a settlement offer they turned down." 2RR183. *See also* 3RR60-61 (on cross-examination, Mr. Arneson stood by his testimony the day before that when he and BGI terminated Lyon Construction, he owed them some money / wasn't sure if BGI was going to owe them money or not).

Mr. Lyon later filed an affidavit claim of lien against the Patty Cakes Bakery project for the same amount ($35,697), and Lyon Construction commenced this lawsuit in August 2010 against the owners of the property to try to collect that money. PX16; 3RR11-12, 135-38; CR6-9. The Rennicks later settled with Lyon Construction (for a payment of $25,000) after Mr. Arneson "encouraged them to" do so. 3RR14-15, 66. A predecessor presiding judge signed an order dismissing with prejudice all claims that had been filed by Lyon Construction against Patty Cakes Bakery and the Rennicks (with each of these parties bearing their own attorney's fees and costs) in January 2012. CR80-81, 324.

In November 2013, all remaining claims between and among BGI, Mr. Lyon and Lyon Construction proceeded to a trial by jury, except attorney's fees, which both sides agreed would be taken up after verdict by a separate motion with the

-17-

trial court. 5RR5-6. Both liability and damages were disputed in the trial court by both sides, resulting in the voluminous reporter's record now before this Court. The trial court determined questions of subcontract breach (by Mr. Lyon, Mr. Lyon's company, *and* BGI) were raised by the evidence for submission to the jury. *See* CR128-29, 132, 135.

The jury's verdict was mostly favorable to BGI and unfavorable to Mr. Lyon. CR123-139.[9] The last-in-time final judgment obtained by BGI below is the second "Judgment Nunc Pro Tunc" signed by the trial court on October 13, 2015. 1SuppCR98-103, 43-57. Mr. Lyon and Lyon Construction have filed timely notice(s) of appeal. CR277-78, 308, 312-13. BGI also filed its own timely notice of appeal. CR292-93.

## Mr. Lyon's Summary of Argument

The trial court's awards for attorney's fees far exceed actual damages awarded in the trial court's final judgment; however, Mr. Lyon has been most significantly harmed (as a businessman and building contractor) by the "fraudulent lien" theory erroneously found by the jury against him in answer to Question No. 4 (CR130) and the resulting trial court judgment under that theory. Mr. Lyon urgently needs relief from that insupportable jury finding and judgment and consequently will brief that issue first and most emphatically.

---

[9] The jury answered "No" to Question No. 6 inquiring whether Lyon Properties & Custom Homes, LLC failed to comply with its subcontract with BGI. CR132.

Mr. Lyon's remaining issues demonstrate additional reversible errors by the trial court in admitting hearsay evidence in support of BGI's claims for high dollar attorney's fees, awarding excessive (and inadequately segregated) attorney's fees based on insufficient evidence (and predicate), and rendering judgment on an inadequate subcontract damages question.

## Mr. Lyon's Arguments and Authorities

**I.    The Jury's Fraudulent Lien Findings, in Answer To Question No. 4, Lack the Required Support of Legally and Factually Sufficient Evidence**

Mr. Lyon preserved his legal sufficiency challenges by presenting a timely and proper motion to disregard the jury's answer to Question No. 4, which the trial court denied.   CR141-47, 169-172; 243, 271; 1SuppCR53, CR98.[10]   Mr. Lyon preserved his factual sufficiency challenges regarding Question No. 4 by filing timely motions for new trial, which the trial court overruled by operation of law. CR266, 268, 308, 310; 1SuppCR53n.8; Tex. R. Civ. P. 329b(c); *see* Tex. R. App. P. 33.1(b); *Cecil v. Smith*, 804 S.W.2d 509, 511-12 (Tex. 1991).[11]   As the plaintiff

---

[10]   *See* Tex. R. Civ. P. 301 (the court may, upon motion and reasonable notice, "disregard any jury finding on a question that has no support in the evidence"); Tex. R. Civ. P. 279 (last sentence) ("A claim that the evidence was legally or factually insufficient to warrant the submission of any question may be made for the first time after verdict . . ."). Jury findings should be disregarded (on a proper motion to disregard) when no legally sufficient evidence supports them or when they are immaterial.  *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994).

[11]   Factual insufficiency of the evidence to support necessary jury findings supports the granting of a new trial.  Tex. R. Civ. P. 324(b)(2); *see generally* W. Wendell Hall, O. Rey Rodriguez, Rosemarie Kanusky & Mark Emery, *Hall's Standards of Review in Texas*, 42 St. Mary's L.J. 3,

asserting a cause of action under section 12.002 of the Texas Civil Practice and Remedies Code, it was BGI's burden to prove all the elements required by the statute and the submitted jury charge.[12]

In determining whether legally and factually sufficient evidence supports the jury's fraudulent lien finding in answer to Question No. 4, this Court must construe sufficiency of the evidence in light of the literal wording of the trial court's charge and the unobjected-to instructions submitted with Question No. 4 in the trial court's charge. *See*, *e.g.*, *Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex. 1985); *see also Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990) ("appellate courts must consider the evidence and inferences as they tend to support *the verdict* and not with a view towards supporting *the judgment*") (italics original); *Saenz v. Fidelity & Guaranty Ins. Underwriters*, 925 S.W.2d 607, 615-16 (Tex. 1996) (Phillips, C.J., concurring in part, joined by Cornyn & Owen, JJ.) (acknowledging sufficiency of the evidence to support jury's finding must be construed in light of "the literal wording of the trial court's charge . . .").

---

40-42 (2010). The question under existing law is whether evidence said to support a particular finding is so weak, or the evidence contrary to the finding is so overwhelming, that the finding is manifestly unjust and a new trial should be ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

[12] *See*, *e.g.*, *Salomon v. Lesay*, 369 S.W.3d 540, 542 (Tex. App.--Houston [1st Dist.] 2012, no pet.) (also aptly observing: "One of the essential elements of a Section 12.002 claim is that the defendant used a document or record ***despite*** ***knowing*** that it reflected a fraudulent lien or claim against real property") (emphases supplied).

The jury necessarily made several independent, affirmative findings when it answered "yes" to Question No. 4, including that Mr. Lyon made, presented or used his affidavit claim of lien [PX16] with knowledge that it was a fraudulent lien or claim against real property, with the intent to defraud, and with the intent to cause BGI to suffer financial injury. CR130. Constructive or imputed knowledge was *not* the question. CR130. Under the trial court's instructions submitted with Question No. 4, a "yes" answer required that Mr. Lyon had actual knowledge that his claimed lien was not valid at the time it was filed. CR130. The instructions under Question No. 4 went on to state the lien was invalid if the amount claimed exceeded a formula that was taken from section 53.024 of the Texas Property Code. *See* Tex. Prop. Code Ann. § 53.024 (Vernon 2014). Exceeded-the-formula is yet another affirmative finding the jury had to make to answer Question No. 4 "yes" and on which BGI also bore the burden of proof. CR130, 124.

The reporter's record from the jury trial contains a few critical exhibits, and sworn testimony by Mr. Lyon, bearing on whether BGI met its burden of proving all the elements under Question No. 4 and section 12.002 of the Texas Civil Practice and Remedies Code. The first is PX14, Mr. Lyon's 5-7-2010 two page letter to Mr. Arneson and BGI explaining Mr. Lyon's calculation of the $35,697 Mr. Lyon claimed was due for work completed. The fax legend at the top of PX14 shows the letter was part of a seven (7) page fax Mr. Lyon sent Mr. Arneson and

-21-

BGI; however, PX14 as introduced by BGI consists of only two pages. Page 2 of that letter explains the financial backup Mr. Lyon was relying on (and faxed to Mr. Arneson and BGI): "Attached are the materials and cost needed through completion per the original plans and contract." BGI chose to redact from its Exhibit 14 the financial backup Mr. Lyon was relying on for his lien calculation.

PX14, like PX15 (Mr. Lyon's 5-25-2014 invoice to BGI for $35,697) and PX16 (affidavit claim of lien for $35,697 Mr. Lyon filed 6-4-2010), was admitted into evidence without objection. 2RR164, 163; 3RR6. All three are probative of (if *anything*) Mr. Lyon's actual subjective belief in May and June 2010 that the amount then due him was $35,697. And Mr. Lyon consistently testified under oath that when he filed his affidavit claim of lien, he believed he was owed the amount that was stated on the lien at that time, which was $35,697. 5RR44-45.

It was undisputed in the evidence that when Mr. Arneson first received PX14, he didn't really know for sure whether there was any possibility BGI might owe Mr. Lyon some money for the work he had done because BGI hadn't completed or hadn't gotten the chance to complete the work BGI felt was needed for repairs; Mr. Arneson testified as follows before the jury: "I didn't argue with the fact that [Mr. Lyon] was demanding money. I argued with the amounts. In fact, I think we actually made them a settlement offer [Mr. Lyon and Lyon Construction] turned down." 2RR183. The reporter's record contains no

correspondence documenting any such argument between Mr. Arneson and Mr. Lyon, but be that as it may, these testimonial admissions by Mr. Arneson for BGI (and BGI's settlement offer to Mr. Lyon) are consistent with Mr. Lyon's actual subjective belief in May and June of 2010 that the remaining amount due Mr. Lyon was $35,697. Granted, that amount later become the subject of dispute and disagreement; however, subsequent disagreement over the proper amount of Mr. Lyon's clamed lien is zero evidence Mr. Lyon had actual knowledge in May and June of 2010 that his claimed lien was invalid.

The fraudulent lien finding in this case is extremely serious to Mr. Lyon and his ability to do business in the future. It's just as harmful to Mr. Lyon's construction business and professional reputation (indeed, probably *more* harmful) than the ***erroneous*** written decision admonishing Hon. Michelle Slaughter for "***willfully***" violating the Code of Judicial Conduct by certain actions as a judge. *See In re Hon. Michelle Slaughter, Presiding Judge of the 405th Judicial District Court, Galveston County, Texas*, Docket No. 15-0001 (Special Court of Review of Texas Sep. 30, 2015) (per curiam); http://judgemichelleslaughter.com/justice-prevails/. ***Willfully*** is lower on the scienter continuum than ***knowingly***; nevertheless, the Special Court of Review of Texas correctly dismissed all charges against Hon. Michelle Slaughter because the evidence against her showed she committed (at ***most***) an "error in judgment . . ." (Slip op. at 18).

-23-

Likewise, the jury's findings in answer to Question No. 4 against Mr. Lyon are unsupported by the evidence under governing Texas substantive law. By stark (and *informative*) contrast, Florida's statute permits liability when a claimed lien amount is "willfully exaggerated" through "gross negligence." *See Fraudulent Construction Liens: Willful Exaggeration or Good Faith Dispute*, 75 Fla. B.J. 34 (Mar. 2001).[13] Mr. Lyon believes the evidence in the reporter's record would not support liability even under Florida's lower willful exaggeration / gross negligence standard (just like the evidence did not support admonishing Judge Slaughter for web posting facts from a pending case in her court),[14] but that kind of question was

---

[13] Florida's "fraudulent" lien statute authorizes liability when "the lienor has *willfully exaggerated* the amount for which such lien is claimed" or "has compiled his or her claim with such *willful and gross negligence* as to amount to a willful exaggeration . . . ." Fla. Stat. Ann. § 713.31(2)(a) (emphases supplied). *See*, *e.g.*, *Casa Linda Tile & Marble Installers, Inc. v. Highlands Place 1981, Ltd.*, 642 So. 2d 766, 768-69 (Fla. 4th DCA 1994) (reversing because "the record does not support a conclusion that this was not a good faith dispute over workmanship concerning the balance owed for work performed") (appeals court also reversed "all awards of costs and attorney's fees, subject to resolution of all other issues on remand"); *see generally Vinci Dev. Co. v. Connell*, 509 So. 2d 1128, 1132 (Fla. 2d DCA 1987) (per curiam) ("[a] subsequent dispute between the parties as to the amount of compensation due according to the contract plan of compensation or even a dispute as to the method of compensation provided in the contract does not convert such a good faith dispute into a fraudulent lien . . .").

[14] *Cf. Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115, 118 (Tex. 1984) ("If a person commits a wrongful act with actual awareness of the falsity, deception or unfairness of the act, then this is a more culpable mental state than one who is grossly negligent. We are not attempting to equate the terms gross negligence, 'knowingly,' 'willful' and intentional. These terms lie on a continuum with gross negligence being the lowest mental state and intentional being the highest"); *St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co.*, 974 S.W.2d 51, 53-54 (Tex. 1998) (per curiam) (finding that a party "*acted knowingly*" does not require evidence merely that the person knew what he was doing; rather, it requires evidence that the person knew what he was doing was false, deceptive, or unfair. In other words, *a person must think to himself* at some point, "Yes, I know this is false, deceptive, or unfair to him, but I'm going to do it anyway") (bold emphasis supplied). The reporter's record contains not even a scintilla of

-24-

*not* before the jury nor is it before the Court in this case. Texas's lawmakers chose not to promulgate the lower scienter standard previously promulgated by Florida's lawmakers. Instead, under governing Texas substantive law (and the trial court's submitted Question No. 4), legally and factually sufficient evidence had to establish Mr. Lyon had actual knowledge his claimed lien was invalid in May and June of 2010. There is no such evidence in the reporter's record whatsoever.

Mr. Lyon testified live before the jury that he was trying to be as fair as he could when he calculated the $35,697 set out in his May 2010 letter, the same calculation he used when he filed his affidavit claim of lien against the Rennicks' property in June 2010. 3RR135-38; PX16. The jury of course had a right to disbelieve Mr. Lyon's testimony, but that does not supply evidence to the contrary, *i.e.*, that Mr. Lyon had actual knowledge his claimed $35,697 lien amount was invalid.[15] The Court should ask itself (and BGI during oral arguments, if needed):

---

evidence that Mr. Lyon *actually knew* (*i.e.*, ***thought to himself***) his affidavit claim was false and fraudulent. The court's charge in this case (like section 12.002 of the Texas Civil Practice and Remedies Code) did not authorize punishing liability under some lesser scienter standard. There is no legally (nor factually) sufficient evidence in the reporter's record that Mr. Lyon filed his affidavit claim of lien with ***knowledge*** that it was fraudulent, with the intent to defraud, and with the intent to cause BGI to suffer financial injury. CR130. *Cf. Centurion Planning Corp. v. Seabrook Venture II*, 176 S.W.3d 498, 507 (Tex. App.--Houston [1st Dist.] 2004, no pet.) (concluding record contained "more than a scintilla of evidence establishing that Knickerbocker had violated section 12.002 when he 'made, presented, or used the lien' knowing, ***based on the lack of a written contract***, that the lien was invalid and intending that it be given the same legal effect as a valid lien") (emphasis supplied). There is no evidence (and should be no contention) that Mr. Lyon's claimed lien was invalid based on lack of a written contract. *See* PX2.

[15] *See Missouri-K.T. R.R. v. McFerrin*, 156 Tex. 69, 90, 291 S.W.2d 931, 945 (1956).

why did BGI deliberately redact from PX14 all the pages of financial backup Mr. Lyon was expressly relying on when he sent Mr. Arneson and BGI his seven page fax in May 2010.[16]  The reason is BGI knew those pages would have shown the fairness and reasonableness of Mr. Lyon's $35,697 lien calculation.  And they would have conclusively and overwhelmingly disproved the required element BGI bore the burden of proving:  that Mr. Lyon had actual knowledge his claimed lien was invalid and fraudulent.  CR130.  The reporter's record is devoid of such evidence; Mr. Lyon's professional reputation and livelihood will unjustly be eviscerated by this verdict and judgment (*if* affirmed); and this Court ought not "pass[] by on the other side." *Luke* 10:31-32 (King James).

Simply put, no "evidence" proves it is "more likely true than not true" (CR124) that Mr. Lyon actually knew his claimed lien amount was invalid.

---

[16]  The trial court apparently believed that the admission of PX14 "without objection" during the jury trial was important in determining the legal sufficiency (or insufficiency) of BGI's evidence concerning fraudulent lien.  10RR16-18.  Again, PX14 (if *anything*) was probative of Mr. Lyon's belief at the time that the $35,697 he was claiming was appropriate.  But even ignoring the probative value of PX14 in Mr. Lyon's favor as the exhibit was admitted without objection, BGI still needed (and *lacks*) evidence that Mr. Lyon had actual knowledge his claimed amount due was invalid.  *See generally Coalition of Cities v. Public Util. Comm'n*, 798 S.W.2d 560, 563-64 (Tex. 1990), *cert. denied*, 499 U.S. 983 (1991) (a party who fails to meet its burden of proof "loses" and it "is not entitled to a second trial to present more evidence"); *Texas Real Estate Comm'n v. Nagle*, 767 S.W.2d 691, 695 (Tex. 1989) ("In an ordinary adversarial proceeding the failure of a party bearing the burden of proof would ordinarily result in rendition of judgment against that party"); *Vista Chevrolet, Inc. v. Lewis*, 709 S.W.2d 176, 176-77 (Tex. 1986) (per curiam) (emphasizing that rendition in such circumstances is "a basic rule of law"); *Jelinek v. Casas*, 328 S.W.3d 526, 538 (Tex. 2010) (despite recognizing "the difficulty of proving" one fact essential to plaintiffs' claims — and sympathizing with the plaintiffs' frustration over the defendant's conduct — supreme court rendered a take-nothing judgment because the plaintiffs "shouldered that burden" in their "quest" to hold the defendant liable).

CR130. With utmost respect, if this Court applies the same standards to Mr. Lyon's conduct that the Special Court of Review of Texas applied to exonerate Hon. Michelle Slaughter, this Court could never conclude there was evidence that Mr. Lyon *knowingly* filed a fraudulent affidavit claim of lien (much less did so with the required "intent to defraud" and the required "intent to cause Building Galveston to suffer financial injury"). CR130. *Cf.* U.S. Const. amend. XIV, § 1 ("No State . . . shall deny to any person within its jurisdiction the equal protection of the laws"). The evidence in the reporter's record does not even come *close* to proving Mr. Lyon *knowingly* filed a fraudulent affidavit claim of lien (CR130); in the words of the Special Court of Review of Texas vindicating Hon. Michelle Slaughter, Mr. Lyon's claimed lien amount was (at *most)* an "error in judgment" (even if BGI had met its burden of proving the statutory formula submitted with Question No. 4 would have yielded a lesser permissible lien amount, which BGI did not do).

Mr. Lyon should *never* have been found guilty of *knowingly* filing a fraudulent affidavit claim of lien. He should *never* have been ordered to pay statutory damages (and three-fold statutory attorney's fees) on BGI's meritless statutory fraudulent lien claim. And he should *never* have his business and all-important reputation as a building contractor eviscerated by this unsupported verdict resulting from skillful lawyering of the (Mills Shirley litigation partner

-27-

Chris Garcia's words) "[t]oo many" (11RR56) Mills Shirley L.L.P. attorneys representing Building Galveston in this case against an out-of-town litigant. On this record, the actual **_knowledge_** inference BGI would have this Court draw is inappropriate as a matter of law and fact.[17]

But before the Court even gets to the question of actual knowledge of invalidity, there is a threshold evidentiary deficit: where is BGI's required evidence that Mr. Lyon's claimed $35,697 lien amount "exceeds" the amount permitted by the formula set out in Property Code section 53.024? CR130. BGI's unsworn original, first amended, second amended, and third amended original

---

[17] *See generally Suarez v. City of Texas City*, 465 S.W.3d 623 (Tex. 2015), *aff'g City of Texas City v. Suarez*, No. 01-12-00848-CV (Tex. App.--Houston [1st Dist.] Mar. 7, 2013) (mem. op.) (despite the truly tragic facts of that case, and even construing record in the light most favorable to Mrs. Suarez, both the Texas Supreme Court and this Court unanimously concluded no evidence raised the required question that the municipality had actual **_knowledge_** of concealed conditions at the beach creating an extreme risk of harm at the time of the incident) (**note**: Houston office of the Mills Shirley law firm successfully represented the defendant municipality on appeal in both the Texas Supreme Court and this Court); *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998) ("meager circumstantial evidence from which equally probable but opposite inferences may be drawn is speculative and thus legally insufficient to support a finding"); *$56,700 in U.S. Currency v. State*, 730 S.W.2d 659, 662 (Tex. 1987) ("When circumstances are consistent with either of two facts and nothing shows that one is more probable than the other, neither fact can be inferred") (reaffirming *Litton Industrial Products, Inc. v. Gammage*, 668 S.W.2d 319, 324 (Tex. 1984)); *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 & n.2 (Tex. 1993) ("we believe that suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence") (reaffirming *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)); *Joske v. Irvine*, 91 Tex. 574, 582-83, 44 S.W. 1059, 1063 (1898) ("broad and wise policy of the law" has always forbidden letting juries deprive parties of their lives, liberty, or property based on "mere surmise or suspicion of the fact sought to be established . . .").

petitions all alleged the "amount claimed" by Mr. Lyon "clearly exceeds[18] the permissible amount" under section 53.024. CR16, 38, 50, 53, 109. BGI's unsworn petitions, however, were neither offered nor admitted into evidence for the jury's consideration on this additional element BGI also bore the burden of proving.

The reporter's record shows that BGI's lead trial counsel wished to display section 53.024 of the Property Code in front of the jury and criticize Mr. Lyon because he did not perform his lien calculations based on the somewhat confusing formula set forth in that statute. 3RR152-55. There is evidence that Mr. Lyon calculated his claimed lien amount based on what he considered fair, relying on a state website he had found on the Internet (3RR151-52), rather than utilizing the formula set out in the instructions the trial court submitted under Question No. 4 based on the statute. Regardless, neither Mr. Lyon, Mr. Arneson, nor any other witness testified before the jury that Mr. Lyon's claimed $35,697 "exceeds" the amount that would be yielded by applying by the statutory formula. *There's just no evidence on this issue.*

Significantly, during a bench conference, *outside the hearing of the jury*, BGI's lead trial counsel, Mr. Lyford, argued to the trial court that Mr. Lyon's $35,697 calculation "exceeds" the maximum amount section 53.024 of the

---

[18] *Cf.* Nathan L. Hecht, *Foreword*: W. Wendell Hall, *Revisiting Standards of Review in Civil Appeals*, 24 St. Mary's L.J. 1041, 1043 (1993) ("I have learned in more than a decade of judging that what is claimed to be clear seldom is").

Property Code would have permitted. 3RR154 (152, 155). But even if the jurors could have heard Mr. Lyford's *ipse dixit*, the reporter's record of this jury trial reflects without dispute that attorney Lyford: (1) was not sworn in as a witness; (2) was arguing to the court outside the hearing of the jury; (3) was not testifying from the witness stand; and (4) gave no testimony the jurors heard (or could have lawfully considered) in reaching their answer to Question No. 4.[19]

Mr. Lyford also emphasized the following point during BGI's closing arguments to the jury: "The trial has been unusual in that we have not had any paid expert witnesses." 5RR120. Mr. Lyford was correct on that one point. The reporter's record shows that no paid expert, no fact witness, and no other witness testified before the jury that Mr. Lyon's $35,697 calculation "exceeds" the statutory limit in Property Code section 53.024. BGI might have hired a construction lien or accounting expert to try and prove Mr. Lyon's claimed $35,697 exceeded the amount permitted by statute and the instructions submitted under Question No. 4 in the Court's charge, but BGI chose not to do so.

Under the submitted charge and as a matter of law, it was BGI's burden to prove, as a threshold matter, that Mr. Lyon's $35,697 lien calculation exceeded the statutory limit in Property Code section 53.024. CR130. The reporter's record

---

[19] Compare *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (per curiam) (party's attorney stated she was "*testifying* . . . as an officer of the court"), with *In re MetroPCS Commc'ns, Inc.*, 391 S.W.3d 329, 338 (Tex. App.--Dallas 2013, orig. pro.) ("Golovoy does not explain, and the record does not show, how argument by his counsel at the hearing constitutes 'evidence.'")

contains zero proof about the value of Mr. Lyon's labor performed and other admittedly confusing statutory items. The jury had no evidence before it establishing proportionate value and proportionate profit margin in relation to the total subcontract price. The fact that Mr. Lyon unwisely relied on a state website he found on the Internet and his own views of fairness — instead of the statutory formula — is at most an "error in judgment"; however, it is zero evidence that his claimed $35,697 lien amount actually "exceeds" the statutory limit in Property Code section 53.024. On that basis alone, the jury's answer to Question No. 4 should have been disregarded, or a new trial should have been granted.

But even if this Court assumed Mr. Lyon's claimed lien amount was not valid (*i.e.*, exceeded what would be permitted under the statute), Question No. 4 additionally and independently required BGI to prove Mr. Lyon had actual knowledge that the amount claimed was invalid and therefore fraudulent. CR130. BGI's written response in the trial court cited irrelevant common-law fraud and premises liability case law, erroneously arguing circumstantial evidence supports a inference of actual knowledge by Mr. Lyon. CR180. Common-law fraud does not require actual **knowledge** of falsity; a "recklessly" false representation is enough under Texas law. *See*, *e.g.*, *Superior Trucks, Inc. v. Allen*, 664 S.W.2d 136, 142 (Tex. App.--Houston [1st Dist.] 1983, writ ref'd n.r.e.); *Christus Health Gulf Coast v. Carswell*, 433 S.W.3d 585, 602, 604-05 (Tex. App.--Houston [1st Dist.] 2013),

-31-

*review granted*, 58 Tex. Sup. Ct. J. 1067 (June 12, 2015) (cause no. 14-0362) (oral arguments heard Nov. 13, 2015).

Moreover, if Texas premises liability law were relevant, Texas premises liability law teaches that actual knowledge means "what a person actually knows as distinguished from constructive or imputed knowledge; that is, what a person does not actually know, but should know or have reason to know. . . . Even when viewed in the light most favorable to the plaintiffs, the evidence is legally insufficient to support the jury's finding of actual knowledge by Price." *Price Constr., Inc. v. Castillo*, 147 S.W.3d 431, 437 (Tex. App.--San Antonio 2004), *pet. denied*, 209 S.W.3d 90 (Tex. 2005). Equally, the evidence in the reporter's record is legally (and factually) insufficient to support the jury's finding of actual knowledge by Mr. Lyon. CR130.

Again, the Court should recall that (as a matter of trial strategy) BGI deliberately redacted from BGI's Exhibit 14 the financial backup Mr. Lyon expressly and openly relied upon when he sent Mr. Arneson and Building Galveston his seven page fax explaining his $35,697 balance due calculation in May 2010. PX14. Without those pages in the reporter's record, the jurors (1) had no idea what was in Mr. Lyon's mind (*see* 10RR16-18), and (2) had no legally (nor factually) sufficient evidentiary basis on which they could find Mr. Lyon had actual knowledge that his claimed lien amount was invalid in May or June 2010.

The jury's answer to Question No. 4 should have been disregarded (or a new trial granted) for this independent reason as well.

The reporter's record contains no evidence whatsoever, direct or circumstantial, that Mr. Lyon ever thought to himself: "Yes, I know my claimed $35,697 lien is invalid or fraudulent, but I'm going to file it anyway." BGI has argued legitimate inferences arise from the facts that Mr. Lyon did not calculate his claimed lien amount in the way required by the Property Code, that Mr. Lyon shared office space with his father's office (Law Offices of Ted B. Lyon & Associates),[20] and that Mr. Lyon purportedly tried to mislead or "defraud" the jury with a liability insurance certificate dated after 2010. CR170; 1SuppCR94.[21] But none of that evidence — even as misleadingly characterized below by BGI —

[20]   This fact would would have zero tendency to support the jury's findings in answer to Question No. 4, even if this Court did not know (or could not take judicial notice) that Mr. Lyon's father, Ted B. Lyon, Jr. (with whom Mr. Lyon shared office space) was — before becoming a trial lawyer — a respected police officer, Texas state representative, and later Texas state senator. *See generally Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 592-93 n.l (Tex. 1992) (first inquiry on "no evidence" review addresses "the *quality* of the evidence offered," inquiring whether the evidence actually "has a tendency to prove the existence of a material fact") (emphasis supplied).

[21]   BGI persuaded the trial court to sustain its "predicate" objections and exclude evidence that would have let lay jurors understand that an ACORD certificate of liability insurance is informational only and would reflect the date such a certificate was issued by Mr. Lyon's insurance agent — in this case apparently 10/28/2013, shortly before the jury trial commenced — as opposed to when the original liability insurance policy was issued. *See* 5RR28-30 (Mr. Lyford successfully asserting "[t]he predicate's not laid . . . and I object" to which the trial court responded: "Sustained"). Mr. Lyon is not challenging that trial court ruling in this appeal; however, Mr. Lyon's issue 2 (argued at pages 37-45, below) will likewise ask this Court to enforce the rules excluding hearsay evidence because BGI did not meet BGI's burden of proving a proper predicate for admitting PX45 (detailed Mills Shirley billing records admitted to support BGI's claims for high dollar attorney's fees) over Mr. Lyon's hearsay objections. 11RR33-36.

-33-

supports a legitimate inference that Mr. Lyon thought to himself at some point: "Yes, I know my claimed $35,697 lien is invalid or fraudulent, but I'm going to file it anyway." See and compare *St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co.*, 974 S.W.2d 51, 53-54 (Tex. 1998) (per curiam).

The jury's "yes" answer to Question No. 4 lacks the required support of legally and factually sufficient evidence, and the jury's answer should have been disregarded or a new trial should have been granted.

As yet another stand-alone, additional element, the jury's "yes" answer Question No. 4 also required a finding that Mr. Lyon made, presented, or used his affidavit claim of lien "with the intent to defraud . . . ." CR130. The trial court's charge did not define "intent to defraud" so instead of the common-law definition, the jurors were required to apply the "commonly understood" meaning of fraud. CR125. Black's Law Dictionary teaches "Intent to defraud means an ***intention to deceive*** another person and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property." *Black's Law Dict.* 381 (5th ed. 1979) (emphases supplied). The American Heritage Dictionary gives this definition: "**de-fraud** . . . To take from or deprive by fraud, ***swindle***." *American Heritage Dict.* 376 (2nd college ed. 1985) (emphases supplied). *See also id.* at 668 ("**in-tent** . . . That which is intended; ***purpose***") (emphases supplied).

-34-

The reporter's record contains zero testimony (and supports no legitimate inference) that Mr. Lyon intended to deceive or had a purpose to swindle anyone. PX14, even as redacted by BGI's trial counsel, shows Mr. Lyon was above-board, forthcoming and transparent with how he calculated his $35,697 claim for funds due for the work completed. Again, page 2 of that faxed letter shows BGI did not want the jurors to see (like BGI saw) the attachment pages that were the financial backup Mr. Lyon openly relied upon and faxed to Mr. Arneson and BGI in May 2010. PX16, the affidavit claim of lien filed the following month, claimed the identical $35,697 lien amount and relied on the same calculations and redacted financial backup BGI had received by fax the month before but did not want the jurors to see. Because there is no legally (nor factually) sufficient evidence that Mr. Lyon made, presented, or used his affidavit claim of lien with the intent to defraud, the jury's "yes" answer to Question No. 4 should have been disregarded (or a new trial should have been granted) for this independent reason as well.

Finally, as yet one additional, stand-alone independent no-evidence ground, the "yes" answer to Question No. 4 also required the jury to find that Mr. Lyon made, presented or used his affidavit claim of lien "with the intent to cause Building Galveston, Inc. to suffer financial injury." CR130. If this Court assumed (for sake of *argument*) that all the other elements were somehow supported by evidence in the reporter's record, the Court should still reverse because no legally

(and no factually) sufficient evidence established that Mr. Lyon made, presented or used his lien with intent to cause BGI to suffer financial injury.[22]

PX16 shows Mr. Lyon's affidavit claim of lien was filed against the Patty Cakes Bakery property owned by the Rennicks (*accord* CR6-9); however, the reporter's record contains no evidence indicating Mr. Lyon's affidavit claim of lien was ever asserted against BGI. Although BGI presented some evidence that, by agreement between BGI and the Rennicks, the $25,000 paid by the Rennicks to settle Mr. Lyon's lien claim was withheld from BGI's retainage (3RR14-15), there was no evidence this was the intent or purpose of Mr. Lyon. Instead, the only evidence is that Mr. Lyon's intent in making, presenting or using the lien was to receive payment from the Rennicks. PX16; 3RR11-12, 135-38; CR6-9.[23]

---

[22] The (Bexar County) jury ***refused*** to find make a "fraudulent lien" finding in *Alanis v. US Bank N.A.*, No. 01-14-00559-CV (Tex. App.--Houston [1st Dist.] Nov. 03, 2015, n.p.h.), so that recent decision is not on point procedurally; however, this Court did correctly observe: "Alanis provided no evidence that either US Bank or BAC intended to cause her physical injury, financial injury, or mental anguish." *See id.* (Slip op. at 37). Similarly, Building Galveston introduced no evidence from which Building Galveston's (Galveston County) jury could have lawfully found Mr. Lyon "intend[ed] to cause Building Galveston, Inc. to suffer financial injury." CR130.

[23] *Cf. Gray v. Entis Mechanical Servs., LLC*, No. 01-11-00129-CV (Tex. App.--Houston [1st Dist.] Apr. 26, 2012, no pet.) (mem. op.) (Slip op. at 13) (upholding trial court fraudulent-lien finding in that bench-tried case because (***unlike*** Mr. Lyon) appellant Gray — among other things — (1) "attempt[ed] to create tax problems for Entis by asking a third person to withhold needed tax information from Entis until Entis would agree to add Gray's names to its liens" and (2) "sought criminal charges against Entis for theft of services despite Gray's bill not yet being due" and (3) "did not file and maintain the liens to secure payment" and thus: "[T]he evidence as a whole supports the trial court's finding that Gray intended to cause Entis financial harm").

The reporter's record contains evidence that Mr. Arneson and BGI encouraged the Rennicks to pay Mr. Lyon $25,000 — 70 cents on the dollar — in settlement of his claimed $35,697 lien (3RR63-66); however, the reporter's record contains no shred of evidence, as required for the jury's "yes" answer to Question No. 4, that Mr. Lyon made, presented or used the lien with intent to cause BGI to suffer financial injury. CR130.[24] That additional element was not addressed by BGI's evidence (at *all*), and Question No. 4 should have been be disregarded (or new trial granted) for this independent reason as well.

With respect, the trial court's judgment awarding damages and attorney's fees for filing a fraudulent lien is erroneous as a matter of law and fact, will cause immense additional harm if not corrected, and should accordingly be reversed.

## II.   The Trial Court Abused Its Discretion and Committed Reversible Error by Overruling Hearsay Objections and Admitting PX45 into Evidence

The trial court's final judgment orders that BGI shall recover from Mr. Lyon attorney's fees in the amount of $142,556.42, plus $20,000 for any unsuccessful appeal to this Court, plus additional amounts for any unsuccessful appeal to the Texas Supreme Court. 1SuppCR101-03. As the party applying for these lodestar

---

[24] During the December 2014 motion to disregard hearing, BGI's lead trial counsel argued to the trial court that Mr. Lyon "knew" BGI had a statutory duty to defend Patty Cakes Bakery (10RR21); however, the reporter's record includes no witness's testimony supporting that argument by BGI's lead trial counsel.

awards (11RR37), BGI bore the burden of proof in the trial court. *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762-63 (Tex. 2012).

*El Apple I* was decided in June 2012, more than one year before BGI's liability claims against Mr. Lyon (and Lyon Construction) were tried to the jury in November 2013, and nearly three years before BGI's claims for attorney's fees were tried to the court in April 2015. 1SuppCR98-99. Our supreme court's June 2012 *El Apple I* decision authoritatively established that, except in the simplest cases, detailed billing records or other documentary evidence should be required to substantiate a claim for attorney's fees, such evidence permitting the court to see "(1) the nature of the work, (2) who performed the services and their rate, (3) approximately when the services were performed, and (4) the number of hours worked." 370 S.W.3d at 762-63.[25]

No doubt aware of its heightened substantive burden of proof under *El Apple I*, BGI sought to introduce its Galveston law firm's lengthy, detailed billing records [PX45] into evidence (in April 2015), with the reporter's record

---

[25]  *Cf. id* at 764 (remanding for a redetermination of attorney's fees, rather than rendering, because "the attorneys in this [*i.e.*, the *El Apple I*] case may not have contemporaneous billing records that document their time as we have not heretofore explained the proof **necessary** to support a fee application under the lodestar method") (emphasis supplied); *accord D&M Marine, Inc. v. Turner*, 409 S.W.3d 693, 702-04 (Tex. App.--Houston [1st Dist.] 2013, pet. denied) (sustaining factual sufficiency challenge, and remanding case for a new trial on attorney's fees, because appellees' evidence failed to meet requirements of then "recent" Texas Supreme Court decision in *El Apple I*).

showing the following offer by BGI's lead trial counsel, objections by Mr. Lyon's

counsel, purported predicate testimony by Mr. Garcia, and the trial court's rulings:

MR. LYFORD: If I didn't say it, Judge, we would offer 45 subject to the same rules as the Court is --

MR. TAYLOR: Objection. Inadmissible hearsay, no custodian on the stand; and we don't believe that the predicate has been laid to show that these questions -- that the predicate has been laid. So we would object to inadmissible hearsay.

THE COURT: So you're admitting that the predicate has been laid, but you're objecting as to hearsay?

MR. TAYLOR: I misspoke then. No. The predicate has not been laid to show that these are business records, that they were contemporaneously made; and I add, too, that a supplement was sent to us while we were driving down to Galveston yesterday. So I make all those objections respectfully.

MR. LYFORD: First of all, he's testifying as an expert. So he's allowed to testify about the things that he's reviewed. I can take the time to qualify these as business records. If counsel really wants us to do that, I'll be happy to.

THE COURT: All right. Go right ahead.

Q. (BY MR. LYFORD) Mr. Garcia, where do those time records come from?

A. They came from the file that I maintained as part of *this* matter.

Q. Are you a member of the firm --

A. Yes.

Q. -- Mills Shirley, that made those records?

A. Yes.

Q. Did you keep your records in their timekeeping system?

-39-

A. Yes.

Q. Did you go to the people that operate that time-keeping system and have them prepare those documents for you to -- and to provide the other side in discovery?

A. Yes, I did.

Q. Are those true and accurate copies of the time records of Mills Shirley in regard to the work that was done on *this* case?

A. Yes.

Q. Are they -- in your mind, are those accurate and reliable sources of information for -- that *you* rely upon[26] in determining the amount of time that Mills Shirley devoted to these claims in *this* case?

A. Yes.

MR. LYFORD: Your Honor, we would offer Exhibit 45 again, as admitted into the record.

(Plaintiff's Exhibit No. 45 offered)

MR. TAYLOR: One question on voir dire?

THE COURT: Go ahead.

VOIR DIRE EXAMINATION

BY MR. TAYLOR:

---

[26] Mr. Garcia was not asked to testify (nor did he testify) that it is reasonable for experts in his field to rely on *his own* law firm's billing records (in a *single* case) that were not even proved to meet the requirements for admission as records of a regularly conducted activity. *See* Tex. R. Evid. 703; *cf. Elizondo v. Krist*, 415 S.W.3d 259, 263-64 & n.7 (Tex. 2013) (opining expert's reliance on "thousands" of similar cases after "persuasively comparing all the circumstances of the case to the settlements obtained in other cases" *might* satisfy Rule 703, but nevertheless holding expert's testimony was conclusory and non-probative). Neither did BGI attorney's fee expert Jack Brock give any such testimony. *Cf.* 11RR70-71, 80 (Mr. Brock testifying that certain "percentages were reached in combination with discussions with Mr. Garcia in relying, to a large extent, on [Mr. Garcia's] personal knowledge of what was involved" and, further, Mr. Brock thinks Mr. Garcia is "a credible witness").

-40-

Q. Were these time records kept contemporaneously?

A. Yes. The records were -- you enter the time or provide the written time sheets to a timekeeper that enters the time a couple of times a week, if not daily.

MR. TAYLOR: Objection stands. Hearsay.

THE COURT: Okay. Overruled. Exhibit No. 45 is admitted.

11RR33-36 (emphases supplied).

There is no doubt PX45 was offered (and admitted) for the truth of the matters asserted in the Mills Shirley time records, and they were therefore hearsay. Tex. R. Evid. 801, 802. Admitted over hearsay objections, PX45 cannot be accorded probative value unless an applicable exception was proved. *See* Tex. R. Evid. 802 (inadmissible hearsay admitted over objections should be denied probative value).

The so-called business records exception actually appears within Rule 803 (as most recently amended without substantive change) as follows:

> **Rule 803.   Exceptions to the Rule Against Hearsay — Regardless of Whether the Declarant Is Available as a Witness**
>
> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> * * *
>
> (6) ***Records of a <u>Regularly</u> <u>Conducted</u> <u>Activity</u>.*** A record of an act, event, condition, opinion, or diagnosis if:
>
> > (A) the record was made at or near the time by — or from information transmitted by — **<u>someone with knowledge</u>**;

-41-

(B)  the record was kept in the course of a ***regularly conducted* business activity**;

(C)  making the record was a ***regular practice*** of that activity;

(D)  ***all* these conditions are shown by** the **testimony** of the custodian or another qualified witness, or by an affidavit or unsworn declaration that complies with Rule 902(10); and

(E) the opponent fails to demonstrate that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. "Business" as used in this paragraph  includes every kind of ***regular organized* activity** whether conducted for profit or not.

Tex. R. Evid. 803(6) (bold/italics/underscoring supplied).

Volume 11 of the reporter's record contains zero testimony (and the record contains no affidavit nor unsworn declaration) showing that the lengthy Mills Shirley time records making up PX45 were made by — or from information transmitted by — someone "with knowledge."  Volume 11 of the reporter's record also contains zero testimony (and the record contains no affidavit nor unsworn declaration) showing the records making up PX45 were kept in the course a "regularly conducted" business or any "regular organized" activity.

In fact, the words "regular," "regularly," "conducted," and "organized," do not appear in *any* question or answer in volume 11 of the reporter's record. Compare 11RR76 (testimony by BGI's non-custodian attorney's fee expert Jack Brock that "in any case a lot of the activity is dictated by what your opponents

do" and that "from **Building Galveston's** perspective, as I understand it, [this] was a case that involved their **reputation**") (emphases supplied), and 11RR56 (testimony by Mills Shirley record custodian and billing partner Chris Garcia candidly admitting under oath to the trial court that "[t]oo many" Mills Shirley attorneys worked on this case), with 11RR96 (Mr. Lyon's additional trial counsel, Ms. Criss, correctly arguing that the legislative purpose of chapter 38's presentment requirement "was to stop cases from taking on a life of their own").

This Court cannot assume (without supporting custodian "testimony") that Mills Shirley's high-dollar billing records (in this reputation-driven case) constitute "regularly conducted business activity" (nor that making those records "was a regular practice of that activity"). Without custodian "testimony" supporting "*all*" the conditions required by Rule 803(6), it was a violation of Rules 801 and 802, an abuse of discretion under this Court's precedent, and reversible error to overrule Mr. Lyon's hearsay objections and to admit PX45 into evidence. *See West v. State*, 124 S.W.3d 732, 736 (Tex. App.--Houston [1st Dist] 2010, no pet.) ("We conclude testimony reflecting that records are maintained as part of a business does not relieve a party from otherwise showing that the records were kept in the course of a regularly conducted business activity and that it was the regular practice of that business activity to make the records").

It makes zero difference that the issue of attorney's fees was tried to the court instead of the jury. Rules excluding hearsay evidence apply whether it is a jury or a judge awarding attorney's fees against a party. *See Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97-98 (Tex. 2009) (per curiam) (where only basis for granting motion was inadmissible hearsay document that should have been excluded from evidence, trial court's findings of fact were supported by legally insufficient evidence; therefore, order granting motion had to be reversed, and judgment had to be rendered denying relief sought by the motion); Lawrence Morales II, *Evidence in A Bench Trial: Do the Rules Really Matter*, 73 Tex. B.J. 110, 114 (2010) (acknowledging that even after a bench trial, an appellate court will sustain a no-evidence challenge when, among other things, the court "is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact"); Tex. R. Evid. 101 (Texas Rules of Evidence govern proceedings in Texas state district court — without regard to whether a jury or the the trial court is deciding the facts); Tex. R. Evid. 802 (inadmissible hearsay admitted over objection should be denied probative value).

BGI will likely argue that a "summary" of BGI's requested attorney's fees (PX46) was discussed, later admitted into evidence without objection, and includes the specific amounts found and awarded by the trial court for BGI's (purportedly

segregated) attorney's fees.  11RR36, 54, 62, 69-70, 74-75, **84**.[27]  Texas Supreme

Court precedent, however, does not allow (as here) a "representation" of earlier

admitted inadmissible evidence to cure the error in overruling objections to

necessary but inadmissible evidence from which the later exhibit was extracted.

*See Kerr-McGee Corp. v. Helton*, 133 S.W.3d 245, 252 (Tex. 2004).

Mr. Lyon's issue 2 should accordingly be sustained, the judgment's awards

for BGI's trial and appellate attorney's fees should be reversed, and this Court

should remand the case for a new trial.

### III. BGI's Legally and Factually Insufficient Attorney's Fee Evidence, Predicate, and Segregation Independently Require a New Trial

Though arguably not required to do so (*see* Tex. R. App. P. 33.1(d)),

Mr. Lyon filed timely motions for new trial asserting no legally or factually

sufficient evidence (and no sustainable predicate) supports the trial court's awards

of $142,556.42 for reasonable and necessary attorney's fees for fraudulent lien and

invalid lien, plus another $20,000.00 in the event Mr. Lyon takes an unsuccessful

---

[27]  *Cf. Sentinel Integrity Solutions, Inc. v. Mistras Group, Inc.*, 414 S.W.3d 911, 928-29 (Tex. App.--Houston [1st Dist.] 2013, pet. denied) (upholding substantial attorney's fee award where admitted "summary was *supported by* approximately 170 pages of redacted bills detailing the services that resulted in those fees, including the type of services performed, the amount of time expended on each service, the identity of the person who performed them and their billable rates, and the dates the services were performed"); *id.* at 922 ("The documentary *evidence* of Olson's attorney's fees *included* approximately 170 pages of redacted *billing records* reflecting the tasks performed by various attorneys and support personnel, the amount of time required for those tasks, the billable rate charged by the various attorneys and personnel, and other litigation expenses incurred in the course of the litigation"); *id.* at 923 ("***Sentinel did not object to the evidence*** supporting the request for attorney's fees ***on any basis***") (all emphases supplied).

appeal to this Court, plus another $10,000.00 in the event Mr. Lyon files a petition for review to the Texas Supreme Court that is denied, plus another $10,000.00 in the event Mr. Lyon's petition for review is denied after briefing on the merits is requested by the Court, plus another $7,500.00 in the event Mr. Lyon's petition for review is denied after oral argument in the Texas Supreme Court.  CR268-69, 311.

Mr. Lyon's timely-filed motions for new trial also asserted the amounts awarded are excessive; manifestly too large; unsupported by legally or factually sufficient evidence appropriately segregating fees (a) among claims for which attorney's fees may and may not be recovered, and (b) between defendants against whom (or which) attorney's fees may and may not be recovered; and (with respect) an abuse of discretion.  CR269, 311.

The trial court overruled Mr. Lyon's timely-filed motions for new trial by operation of law.  Tex. R. Civ. P. 329b(c); Tex. R. App. P. 33.1(b).  Those rulings were also in error.  *See generally Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313-14 (Tex. 2006) ("if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees.  Intertwined facts do not make [unrecoverable] fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated").

In this case, it is undisputed that BGI incurred considerably more in attorney's fees pursuing BGI's breach of subcontract action (for which the trial court ruled attorney's fees are **not** recoverable under chapter 38) than BGI incurred pursuing its claims for invalid lien and fraudulent lien. PX46. The record shows the trial court sustained defendants' no-pleading objection regarding the required presentment, denied BGI's claim for attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code, and granted BGI's motion for attorney's fees only under Tex. Prop. Code section 53.156 and Tex. Civ. Prac. & Rem. Code section 12.002. 11RR11, 85, 87; 1SuppCR98-99.

BGI's total requested attorney's fees through the trial were $158,396.02, reduced by only 10% (to $142,556.42) if (as the trial court later ruled) fees for breach of contract were disallowed and recovery of fees was allowed only for invalid lien and fraudulent lien. PX46. BGI's exhibit asserts there should be only a 12% reduction (down to $139,388.50) if both breach of contract and fraudulent lien are disregarded, and there were a recovery only for invalid lien. PX46.

As already demonstrated, the judgment for fraudulent lien lacks the required support of legally and factually sufficient evidence. Once that judgment is properly reversed, BGI will have no recovery for invalid lien as a matter of law because this Court's duty, upon reversing, will be to render the judgment the trial court should rendered (*i.e.*, render judgment ordering that BGI take nothing from

Mr. Lyon on BGI's claim for fraudulent lien under section 12.002 of the Texas Civil Practice and Remedies Code) (or alternatively order a general remand for further proceedings). *See* Tex. R. App. P. 43.2(c), (d).[28]

The trial court previously dismissed with prejudice (in January 2012) Lyon Construction's claims against Patty Cakes Bakery and the Rennicks (CR80-81) after those claims settled "early on" (11RR83-84), but — apart from the insupportable fraudulent lien finding (in answer to Question No. 4) and existing judgment on that finding — there was no order, adjudication or decree by the court that Mr. Lyon's claimed lien was invalid. *Cf. Trinity Drywall Sys., LLC v. TOKA General Contractors, Ltd.*, 416 S.W.3d 201, 206 (Tex. App.--El Paso 2013, pet. denied) ("the judgment decreed that [subcontractor]'s mechanic's lien against [owner]'s real property was invalid and unenforceable and awarded [owner] $43,585.50 as attorney's fees pursuant to Section 37.009 of the Texas Civil Practice and Remedies Code[29] and Section 53.156 of the Texas Property Code"); *R.M. Dudley Constr. Co. v. Dawson*, 258 S.W.3d 694, 707 (Tex. App.--

---

[28] Compare *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 141 & n.23 (Tex. 2012) (it is appropriate for a Texas appellate court to **render** judgment against claim that is supported by legally **in**sufficient evidence, and to **remand** for new trial the claim or claims on which there **was** legally sufficient evidence), and Tex. R. App. P. 3.1(b) ("*Appellate court* means the courts of appeals . . . and the Supreme Court"), with *Perry Nat'l Bank v. Eidson*, 340 S.W.2d 483, 487 & n.2 (Tex. 1960) (majority of the supreme court construed appeals court's judgment as providing for a "general remand"), and Robert W. Calvert, *Appellate Court Judgments or Strange Things Happen on the Way to Judgment*, 6 Tex. Tech. L. Rev. 915, 921 (1975).

[29] It is undisputed that BGI never pleaded entitlement to attorney's fees under section 37.009 of the Texas Civil Practice and Remedies Code. *See* 11RR7-9; CR111.

Waco 2008, pet. denied) (holding presiding trial court judge abused discretion "by misapplying the law in his conclusion that the *entire* proceeding was of the type referenced in section 53.156") (italics original).

There is no judgment of the trial court (nor will there be after this Court reverses judgment on BGI's fraudulent lien theory) that could support attorney's fees under section 53.156 of the Property Code. *Cf. Contemporary Contractors, Inc. v. Centerpoint Apt. Ltd. P'ship*, No. 05-13-00614-CV (Tex. App.--Dallas July 3, 2014, no pet.) (mem. op. at 10) (explaining trial court's judgment ordered "the Denton County Clerk, Denton County Records Department, Deed and/or Record Department and/or the appropriate government authority responsible for removal or action on such lien" to "take all actions necessary to immediately remove, abrogate and/or nullify such lien filed by [appellant] . . ." and, *consequently*, "appellee was entitled to recover its attorney's fees under section 53.156 for removal of the lien");[30] *Amegy Bank N.A. v. Brazos M&E, Ltd. (In re Bigler LP)*, 458 B.R. 345, 387 (Bankr. S.D. Tex. 2011) ("this Court concludes that it does have discretion to award attorneys' fees to Halgo because the suit at bar: (i) is governed by § 53.156; and (ii) has been an action whereby

---

[30] The record in this case contains no trial court order, adjudication or decree requiring Mr. Lyon, Galveston County officials, or anyone else to take any actions to remove, abrogate and/or nullify Mr. Lyon's earlier claim of lien.

Amegy has attempted to convince this Court that Halgo has no valid lien in the first instance, or, even if it does, Halgo's lien is inferior to the lien of Amegy").[31]

Correctly anticipating this Court's reversal on BGI's fraudulent lien theory, BGI's attorney's fee expert Jack Brock opined from the witness stand: "I think not only would it be helpful to the Court -- even if the Court were to award all the attorneys' fees, to break out within the judgment the award of attorneys' fees for each of those independent causes of action. For instance, if the Court -- even though the Court awarded fraudulent lien, it would be appropriate for the Court in a judgment to suggest that if the fraudulent lien were set aside, then here's what the fees would be." 11RR73. Mr. Brock continued: "In the event this case were appealed, then that gives the appellate court the ability to modify the judgment, as opposed to remanding for the determination." 11RR73. Again correctly foreseeing this Court's judgment of reversal, Mr. Brock further continued: "[N]ow that the appellate court, for instance, has said *fraudulent lien was improper*, that *there wasn't adequate or sufficient evidence*, then the Court could modify its [*sic*] judgment as it relates to the attorneys' fees without having to remand it [*sic*] back to the trial court." 11RR73 (emphasis supplied).

---

[31] Apart from the jury's answer to Question No. 4 (and the trial court's final judgment awarding BGI damages on its "fraudulent lien" claim), the record in this case contains no trial court order, adjudication or decree declaring Mr. Lyon's earlier claim of lien is valid or invalid or, alternatively, inferior to the claim of any other creditor.

Despite these entreaties by Mr. Brock, the trial court chose not to make additional or alternative findings segregating fees among the various causes of action, and thus a new trial on attorney's fees is required at a minimum. Nor has BGI at any time (even in BGI's Exhibit 46) segregated fees for making claims against Mr. Lyon (against whom the trial court *did* award attorney's fees) as opposed to Lyon Construction (against which the trial court held *neither* damages *nor* attorney's fees were recoverable). Consequently, even if some portion of the attorney's fees might arguably be recoverable under section 53.156 of the Property Code (which Mr. Lyon respectfully denies), this Court cannot make original fact findings on attorney's fees.[32] Instead, as BGI's attorney's fee expert acknowledged, a remand for further trial court proceedings on attorney's fees would be necessary.

On this record, the trial court's awards of trial and appellate attorney's fees to BGI are legally unsupported, factually excessive, not adequately segregated among parties and claims, and (with respect) were an abuse of discretion. Mr. Lyon's issue 3 should accordingly be sustained, the trial court's excessive (and inadequately segregated) awards for trial and appellate attorney's fees should be reversed, and the case should be remanded for a new trial.

---

[32] *See Trevino v. American Nat'l Ins. Co.*, 140 Tex. 500, 506, 168 S.W.2d 656, 660 (1943) (reaffirmed on this point in *Stewart Title Guar. Co. v. Aiello*, 941 S.W.2d 68, 73 (Tex. 1997)).

**IV. BGI Failed In BGI's Burden to Submit an Adequate Jury Question Regarding Damages for Mr. Lyon's Alleged Failure to Comply with the Subcontract; Consequently, The Trial Court Should Have Granted Defendants' Motions for New Trial for This Additional Reason as Well**

In light of applicable standards governing review of jury findings, Mr. Lyon cannot challenge in this appeal the sufficiency of the evidence supporting the jury's findings that he, individually, entered into (and failed to comply with) his subcontract with BGI (CR127-28), even though Mr. Lyon respectfully disagrees with those findings. When writing its judgment, however, this Court should remember that questions of subcontract compliance were hotly disputed (on ***both*** sides) below, and the trial court determined questions of subcontract breach (by ***both*** sides) were raised for submission to the jury. CR127-28, 132-36.[33]

"[I]t was [BGI's] burden to obtain affirmative answers to jury questions as to the necessary elements of [BGI's] cause of action." *Ramos v. Frito Lay, Inc.*, 784 S.W.2d 667, 668 (Tex. 1990). This same rule also applies to BGI's burden of proving and submitting jury questions under a correct legal measure of damages. *See W.O. Bankston Nissan, Inc. v. Walters*, 754 S.W.2d 127, 128 (Tex. 1988),

---

[33] *See generally Estrada v. Dillon*, 44 S.W.3d 558, 562 (Tex. 2001) (per curiam), *rev'g in part* 23 S.W.3d 422 (Tex. App.--Amarillo 2000) (holding court of appeals erred by remanding the case for a new trial solely on the damages issue when defendants initially contested liability in the trial court, but did not challenge liability post-judgment or on appeal) (interpreting Tex. R. App. P. 44.1(b)(1)); *El-Khoury v. Kheir*, 241 S.W.3d 82, 90 (Tex. App.--Houston [1st Dist.] 2007, pet. denied) ("we may not order a separate trial solely on the issue of damages when, as here, the parties contested liability at trial").

*reaffirmed in part (on rehearing) by Spencer v. Eagle Star Ins. Co. of Am.*, 876

S.W.2d 154, 158 (Tex. 1994)).

As submitted, Question No. 3 (regarding damages from Mr. Lyon's failure

to comply with his subcontract with BGI) with accompanying instructions and the

jury's answers read as follows:

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Building Galveston, Inc. for its damages, if any, that resulted from such failure to comply?
>
> The measure of damages for the breach of a construction contract by a subcontractor is the difference between the subcontract price, and the total of the following amounts:
>
> 1)  The amount actually paid to the subcontractor;
>
> 2) the reasonable and necessary amounts paid by the contractor for repairing any defective work performed by the subcontractor,
>
> 3) the reasonable and necessary cost to the contractor of completing the subcontractor's work; and
>
> 4)  the amounts paid by Building Galveston, Inc. that were a natural probable, and foreseeable consequence of the failure to comply.
>
> Do not add any amount for interest on damages, if any.
>
> Answer separately in dollars and cents for damages, if any.
>
> 1. The reasonable and necessary amounts paid by Building Galveston, Inc. for repairing any defective work performed by Ted Lyon III.
>
> Answer:  __26,389[76]____

2.  The reasonable and necessary cost to Building Galveston, Inc. of completing the work performed by Ted Lyon III.

Answer:  _33037.16____

3.  The amounts paid by Building Galveston, Inc. that were a natural, probable, and foreseeable consequence of the failure to comply.

Answer:  _7926.92____

CR129.

The sum of the jurors' findings in answer to Question No. 3 would have been $67,353.84, but BGI never contended the jury's findings could support judgment for principal damages of $67,353.84.  Instead, BGI repeatedly "moved for judgment" (*not* on the verdict) indefensibly requesting judgment for principal damages of either $47,820.59 (if *all* the jury findings in BGI's favor were upheld) or $40,889.84 (if the trial court granted Mr. Lyon's motion to disregard the jury's answer to Question No. 4, permitting only BGI's breach of contract theory to stand).  CR173-74, 175-76.  During the December 2014 motion to disregard hearing, Mr. Lyon's counsel pointed out the damages portion of BGI's motion was inappropriate and the most Question 3 even *arguably* supported was a judgment for principal damages of about $15,800 (instead of $40,000).  10RR23-25, 27-29.

Later BGI's trial counsel admitted in correspondence to the trial court (with an enclosed "JUDGMENT WORKSHEET") that Question No. 3 did *not* support $40,889.84 in principal damages (as BGI had previously requested) but instead

(according to *counsel's* post-verdict calculations) a "**Recoverable Difference**" of just $15,889.84. CR240, 242. After the trial court rendered judgment awarding BGI $15,889.84 for breach of contract (CR245, 273) — based on BGI's judgment worksheet calculations (CR242), instead of the the jury's answers to Question No. 3 (CR129) — defendants timely filed motions for new trial asserting the jury's answers to Question No. 3 were not only "excessive" and "manifestly too large" but also asserting:

> Question No. 3 as submitted to the jury is also too vague and confusing to support the Court's awarding $15,889.84 (or any amount) for BGI's breach of contract damages. There is no express finding by the jury supporting the Court's $15,889.84 award for BGI's breach of contract claims, and Question No. 3 cannot salvage the Court's 5-19-2015 (7-31-2015) judgment on appeal. *See generally Lovelace v. Sabine Consolidated, Inc.*, 733 S.W.2d 648, 655 (Tex. App.--Houston [14th Dist.] 1987, writ denied) ("[The appellee] mistakes where the duty to submit separate jury findings on damages lies. An appellant cannot be held accountable for the failure of an appellee to secure separate jury findings upon which an accurate judgment could be based").

CR267-68 (309). The trial court overruled defendants' motions for new trial by operation of law. Tex. R. Civ. P. 329b(c); Tex. R. App. P. 33.1(b). Those rulings were also reversible errors.

"When a special verdict is rendered . . . , the court shall render judgment thereon unless a new trial is granted or judgment is rendered notwithstanding the verdict or jury finding under these rules." Tex. R. Civ. P. 300. Our rules also provide "that upon motion and reasonable notice the court may render judgment

-55-

non obstante veredicto if a directed verdict would have been proper, and provided further that the court may upon like motion and notice, disregard any jury finding that has no support in the evidence." Tex. R. Civ. P. 301.

BGI never sought judgment on the jury's actual answers to Question No. 3 because BGI's damages question and answer blanks did not call for an actual verdict on recoverable subcontract damages, but rather (at most) elements of a formula for BGI (and later the Court) to work out later in determining what principal amount of damages should be awarded in the Court's judgment.

That's not the way our system of trial by jury works. In a jury trial, as here, the plaintiff must obtain findings the Court can incorporate into its judgment (*if* the evidence supports the amounts found by the jury). Otherwise, defendants are denied their constitutional right (like the plaintiff's right) to have the jury decide every material fact that is disputed in the evidence (in this case, what amount of actual damages, if any, would fairly and reasonably compensate BGI for Mr. Lyon's supposed failure to comply with his subcontract).[34]

---

[34] *See generally Haygood v. De Escabedo*, 356 S.W.3d 390, 399 (Tex. 2012) (rejecting dissenters' argument for "post-verdict" proceedings to finalize actual damage awards in personal injury lawsuits because "a requirement that the trial court resolve disputed facts in determining the damages to be awarded violates the constitutional right to trial by jury"); *Texas & Pac. Ry. Co. v. Van Zandt*, 159 Tex. 178, 182-83, 317 S.W.2d 528, 531-32 (1958) (opinion overruling plaintiff's motion for rehearing) (usual harmless error rule *cannot* be applied when, as here, to do so would deny a party's constitutional right of trial by jury).

The best BGI will muster is an argument that BGI and the trial court cobbled together bits and piece of evidence (*after* BGI backed down and no longer inappropriately requested $25,000 for loss of retainage damages for breach of contract), and the $15,889.84 awarded for subcontract damages can be teased out of the reporter's record. But, with respect, BGI failed to secure accurate jury findings on which any judgment for breach of subcontract damages could properly be awarded. BGI also failed to request or obtain any order disregarding the jurors' excessive and confusing answers to Question No. 3, none of which supports the trial court's $15,889.84 award for breach of subcontract damages.

As a result, Mr. Lyon's issue 4 should be sustained, the trial court's judgment should be reversed, and this cause should be remanded for a new trial.

## Conclusion

Mr. Lyon and Lyon Construction primarily request that: (1) the jury's answer to Question No. 4 be set aside; (2) the trial court's final judgment be reversed; (3) this Court render judgment ordering that BGI shall take nothing from Mr. Lyon on BGI's claim for fraudulent lien claim under section 12.002 of the Texas Civil Practice and Remedies Code; and (4) this Court remand the cause to the trial court for a new trial on the breach of subcontract, actual damages and attorney's fees issues.

-57-

Mr. Lyon and Lyon Construction also request that this Court: (5) order the Galveston County district clerk's office to refund to Mr. Lyon and Lyon Construction their $65,972.00 cash deposit in lieu of supersedeas bond (CR315-323, 347; 1SuppCR5, 96-97); (5) tax costs of the appeal(s) against BGI; and (6) grant Mr. Lyon and Lyon Construction all other appropriate relief to which they may be entitled (including a general remand if the Court were to sustain only the *factual* sufficiency challenge concerning Question No. 4).

Respectfully submitted,

TED B. LYON & ASSOCIATES, P.C.

Ben Taylor (19684500)
btaylor@tedlyon.com
Josh Birmingham (24059329)
jbirmingham@tedlyon.com
18601 LBJ Freeway, Suite 525
Mesquite, Texas 75150-5632
Telephone: 972-279-6571
Facsimile: 972-279-3021

CRISS & ROUSSEAU LAW FIRM L.L.P.
Susan E. Criss (06630475)
susan.criss@crissrousseau.com
P.O. Box 17046
Galveston, TX 77552
Telephone: 409-515-6176
Facsimile: 409-763-1508

counsel for appellants Ted B. Lyon, III, *et al.*

## Certificate of Word Count Compliance

Relying on the word count function in the word processing software used to produce this document, I certify that the number of words in this brief (*excluding* any caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix items) is **11,768** [15,000 or less].

Ben Taylor

Ben Taylor

## Certificate of Filing and Service

I hereby certify that on the **16th** day of **November**, 2015, this brief (with accompanying appendix items) has been e-filed with the Clerk of the First Court of Appeals; also, a copy of this brief was served served upon BGI's counsel of record via e-file and e-mail (with a courtesy copy to the trial court by e-mail also) this **16th** day of **November**, 2015:

Scott Lyford (slyford@millsshirley.com)
Hon. Michelle M. Slaughter (c/o dana.winston@co.galveston.tx.us)

_____
Ben Taylor

JOHN D. KINARD
CLERK DISTRICT COURT
FILED

NOV 08 2013 3:17pm

GALVESTON COUNTY, TEXAS
BY_____
DEPUTY

No. 10CV2353

| | | |
|---|---|---|
| BUILDING GALVESTON, INC. | § | IN THE DISTRICT COURTS |
| | § | |
| VS. | § | |
| | § | OF GALVESTON COUNTY, TEXAS |
| LYON CONSTRUCTION SERVICES, | § | |
| TED B. LYON, III, AND LYON | § | |
| PROPERTIES & CUSTOM HOMES, LLC | § | 405TH JUDICIAL DISTRICT |

**Charge of the Court**

Ladies and Gentlemen of the jury:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason. I will give you a number where others may contact you in case of an emergency.

Here are the instructions for answering the questions.

1. Do not let bias, prejudice or sympathy play any part in your deliberations.

2. Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.



10 - CV - 2353
DCJUCV
Jury Charge and Verdict
748847

1

3. You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4. Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

5. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

6. All the questions and answers are important. No one should say that any question or answer is not important.

7. Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence unless you are told otherwise. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence unless you are told otherwise.

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

2

8. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

9. Do not answer questions by drawing straws or by any method of chance.

10. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

11. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

12. The answers to the questions must be based on the decision of at least ten of the twelve jurors. The same ten jurors must agree on every answer. Do not agree to be bound by a vote of anything less than ten jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

When words are used in this charge in a sense that varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning.

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw

the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

The Rules of Evidence ordinarily do not permit witnesses to testify as to their opinions or conclusions. Two exceptions to this rule exist. The first exception allows an ordinary citizen to give his or her opinion as to matters that he or she observed or of which he or she has first-hand knowledge. The second exception allows witnesses who, by education, training and experience, have acquired a certain specialized knowledge in some art, science, profession or calling, to state an opinion as to relevant and material matters.

The purpose of opinion witness testimony is to assist you in understanding the evidence and deciding the facts in this case. You are not bound by this testimony and, in weighing it, you may consider his or her qualifications, opinions and reasons for testifying, as well as all other considerations that apply when you evaluate the credibility of any witness. In other words, you should give it such weight as you think it fairly deserves and consider it in light of all the evidence in this case.

# QUESTION NO. 1

Did Ted Lyon III, individually, and Building Galveston, Inc. agree to enter into a subcontract agreement for the construction of the Patty Cakes Bakery?

You are instructed that Ted Lyon III is presumed to have individually agreed to enter into a subcontract agreement for the construction of the Patty Cakes Bakery unless, prior to making the subcontract agreement, Ted Lyon III disclosed to Building Galveston, Inc., or Building Galveston had actual knowledge, that Ted Lyon III was signing the subcontract as an agent for Lyon Properties & Custom Homes, LLC.

You are instructed that an agent is defined as a person who acts for another person or legal entity with that person or entity's authority. Authority for another to act for a party must arise from the party's agreement that the other act on behalf and for the benefit of the party. If a party so authorizes another to perform an act, that other party is also authorized to do whatever else is proper, usual, and necessary to perform the act expressly authorized.

Answer "Yes" or "No."

Answer: _____Yes_____

127

If you answered "Yes" to Question No. 1, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 2

Did Ted Lyon III fail to comply with his subcontract with Building Galveston, Inc.?

Answer "Yes" or "No."

Answer: ___Yes___

128

If you have answered "Yes" to both Questions Nos. 1 and 2, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 3

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Building Galveston, Inc. for its damages, if any, that resulted from such failure to comply?

The measure of damages for the breach of a construction contract by a subcontractor is the difference between the subcontract price, and the total of the following amounts:

1) The amount actually paid to the subcontractor;

2) the reasonable and necessary amounts paid by the contractor for repairing any defective work performed by the subcontractor;

3) the reasonable and necessary cost to the contractor of completing the subcontractor's work; and

4) the amounts paid by Building Galveston, Inc. that were a natural, probable, and foreseeable consequence of the failure to comply.

Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

1. The reasonable and necessary amounts paid by Building Galveston, Inc. for repairing any defective work performed by Ted Lyon III.

   Answer: _____26,389<sup>76</sup>_____

2. The reasonable and necessary cost to Building Galveston, Inc. of completing the work performed by Ted Lyon III.

   Answer: _____33037.16_____

3. The amounts paid by Building Galveston, Inc. that were a natural, probable, and foreseeable consequence of the failure to comply.

   Answer: _____7926.92_____

7

# QUESTION NO. 4

Did Ted Lyon III make, present or use a document or other record with knowledge that the document or other record was a fraudulent lien or claim against real property or an interest in real property with the intent to defraud and with the intent that the document be given the legal effect of evidencing a valid lien or claim against real property or an interest in real property with the intent to cause Building Galveston, Inc. to suffer financial injury?

A lien or claim is fraudulent if the person who files it has actual knowledge that the lien or claim was not valid at the time it was filed.

A lien is invalid if the amount of a lien claimed by a subcontractor exceeds:

(1) An amount equal to the proportion of the total subcontract price that the sum of the labor performed, materials furnished, materials specially fabricated, reasonable overhead costs incurred, and proportionate profit margin bears to the total subcontract price; minus

(2) the sum of previous payments received by the claimant on the subcontract.

Answer "Yes" or "No."

Answer: ___Yes___

8

If you have answered "Yes" to Question No. 4, then answer the following question. Otherwise, do not answer the following question.

**QUESTION NO. 5**

What sum of money, if paid now in cash, would fairly and reasonably compensate Building Galveston, Inc. for its damages, if any, that resulted from Ted B. Lyon, III presenting or using a fraudulent lien or claim against real property?

Answer in dollars and cents for damages, if any:

Answer: $ ~~31,90~~ 31,930.75

# QUESTION NO. 6

Did Lyon Properties & Custom Homes, LLC fail to comply with its subcontract with Building Galveston, Inc.?

Answer "Yes" or "No."

Answer: ___No___

If you have answered "Yes" to Question No. 6, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 7

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Building Galveston, Inc. for its damages, if any, that resulted from such failure to comply?

The measure of damages for the breach of a construction contract by a subcontractor is the difference between the subcontract price, and the total of the following amounts:

1) The amount actually paid to the subcontractor;

2) the reasonable and necessary amounts paid by the contractor for repairing any defective work performed by the subcontractor;

3) the reasonable and necessary cost to the contractor of completing the subcontractor's work; and

4) the amounts paid by Building Galveston, Inc. that were a natural, probable, and foreseeable consequence of the failure to comply.

Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

1. The reasonable and necessary amounts paid by Building Galveston, Inc. for repairing any defective work performed by Lyon Properties and Custom Homes, LLC.

   Answer: _____

2. The reasonable and necessary cost to Building Galveston, Inc. of completing the work performed by Lyon Properties and Custom Homes, LLC.

   Answer: _____

3. The amounts paid by Building Galveston, Inc. that were a natural, probable, and foreseeable consequence of the failure to comply.

   Answer: _____

11

133

If you answered "No" to Question No. 1, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 8

Did Building Galveston, Inc. and Lyon Properties & Custom Homes LLC enter into a subcontract agreement for the construction of Patty Cakes Bakery?

You are instructed that Ted Lyon III is presumed to have individually agreed to enter into a subcontract agreement for the construction of the Patty Cakes Bakery unless, prior to making the subcontract agreement, Ted Lyon III disclosed to Building Galveston, Inc., or Building Galveston had actual knowledge, that Ted Lyon III was signing the subcontract as an agent for Lyon Properties & Custom Homes, LLC.

You are instructed that an agent is defined as a person who acts for another person or legal entity with that person or entity's authority. Authority for another to act for a party must arise from the party's agreement that the other act on behalf and for the benefit of the party. If a party so authorizes another to perform an act, that other party is also authorized to do whatever else is proper, usual, and necessary to perform the act expressly authorized.

Answer "Yes" or "No."

Answer: _____

12

If you answered " Yes" to Question No. 8, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 9

Did Building Galveston, Inc. fail to comply with its subcontract with Lyon Properties & Custom Homes, LLC?

Answer "Yes" or "No."

Answer: _____

If you have answered "Yes" to Question No. 9, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 10

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Lyon Properties & Custom Homes, LLC for its damages, if any, that resulted from such failure to comply?

The measure of damages is the difference between the value of the work performed by Lyon Properties & Custom Homes, LLC under the agreement, and the total of the amount actually paid to Lyon Properties & Custom Homes, LLC and the reasonable and necessary amounts paid by Building Galveston, Inc. for repairing any defective work performed by Lyon Properties & Custom Homes, LLC d/b/a Lyon Construction Services.

Consider the following elements of damages, if any, and none other.

Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

1. The value of the work performed and the materials provided by Lyon Properties & Custom Homes, LLC for services performed under the agreement.

   Answer: _____

2. The reasonable and necessary amounts paid by Building Galveston, Inc. for repairing any defective work performed by Lyon Properties & Custom Homes, LLC.

   Answer: _____

14

136

## Presiding Juror:

1)      When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2)      The presiding juror has these duties:

     a.   have the complete charge read aloud if it will be helpful to your deliberations;

     b.   preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

     c.   give written questions or comments to the bailiff who will give them to the judge;

     d.   write down the answers you agree on;

     e.   get the signatures for the verdict certificate; and

     f.   notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

15

**Instructions for Signing the Verdict Certificate:**

1. Unless otherwise instructed, you may answer the questions on a vote of ten jurors. The same ten jurors must agree on every answer in the charge. This means you may not have one group of ten jurors agree on one answer and a different group of ten jurors agree on another answer.

2. If ten jurors agree on every answer, those ten jurors sign the verdict.

If eleven jurors agree on every answer, those eleven jurors sign the verdict

If all twelve of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3. All jurors should deliberate on every question. You may end up with all twelve of you agreeing on some answers, while only ten or eleven of you agree on other answers. But when you sign the verdict, only those ten who agree on every answer will sign the verdict.

Do you understand these instructions? If you do not, please tell me now.

HONORABLE MICHELLE M. SLAUGHTER
PRESIDING JUDGE

16

JOHN D. KINARD
CLERK DISTRICT COURT
FILED
12:30 PM
NOV 1 2 2013

GALVESTON COUNTY, TEXAS
BY_____DEPUTY

**Verdict Certificate**

Check one:

✓ Our verdict is unanimous. All twelve of us have agreed to each and every answer. The presiding juror has signed the certificate for all twelve of us.

_Deena Welty_____          _Deena Welty_____
Signature of Presiding Juror                  Printed Name of Presiding Juror


_____ Our verdict is not unanimous. Eleven of us have agreed to each and every answer and have signed the certificate below.


_____ Our verdict is not unanimous. Ten of us have agreed to each and every answer and have signed the certificate below.

| | Signature | Name Printed |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |
| 6. | | |
| 7. | | |
| 8. | | |
| 9. | | |
| 10. | | |
| 11. | | |

17

139



No. 10CV2353

| | | |
|---|---|---|
| BUILDING GALVESTON, INC. | § | IN THE DISTRICT COURTS |
| | § | |
| VS. | § | |
| | § | OF GALVESTON COUNTY, TEXAS |
| LYON CONSTRUCTION SERVICES | § | |
| TED B. LYON, III, AND LYON | § | |
| PROPERTIES & CUSTOM HOMES, LLC | § | 405TH JUDICIAL DISTRICT |

## JUDGMENT NUNC PRO TUNC

~~The above styled- and numbered-cause came on for Jury Trial on the 4th day of~~ November, 2013. Plaintiff Building Galveston, Inc. and Defendants Lyon Properties & Custom Homes, LLC d/b/a Lyon Construction Services and Ted B. Lyon, III, appeared through their attorneys of record and announced that they were ready for trial. The parties agreed on the record and before the Court that the issues of recovery of attorney's fees by either Plaintiff or Defendants would be tried to the Court following the Jury's verdict on the merits of the causes of action asserted by the parties.

A jury was duly accepted, impaneled, and sworn. After hearing evidence, arguments of counsel, and the Court's instructions and after receiving questions to be answered, the jury returned its verdict, which is incorporated herein as if set forth in full.

On January 30, 2014, defendant Ted B. Lyon, III, filed his motion requesting the Court to ~~disregard the jury's answer to Question No. 4. On September 29, 2014, Plaintiff Building~~ Galveston, Inc. moved for judgment based on the jury's verdict. The Court conducted a hearing on those motions on December 16, 2014. The Court, having heard and considered all of the above, is of the opinion that defendant's Motion to Disregard should be DENIED.

Thereafter, on February 5, 2015, Plaintiff filed its Application for Attorney's Fees. On April 9, 2015, Plaintiff filed its First Supplemental Petition. On April 10, 2015, Defendants filed

their Objections to the Application and the filing of the Supplemental Petition. On April 17, 2015, the Court heard evidence and argument of counsel in regard to the issues concerning attorney's fees.

At the hearing, Plaintiff sought leave of court to file its First Supplemental Petition, to which Defendants objected. The Court denied Plaintiff leave to file the supplemental petition on the record at the hearing as such petition was untimely. On request for reconsideration urged by Plaintiff in its post-hearing briefing and in consideration of the briefing supplied by both parties following the hearing, the Court hereby DENIES the Plaintiff's oral motion for leave to file its First Supplemental Petition.

At the hearing, Defendants made objections to the evidence which the Court took under advisement. The Court makes the following rulings on the objections:

1.  Defendants objected to Plaintiff s presentation of evidence on presentment claiming that Plaintiff failed to plead presentment. The Court SUSTAINS that objection, which moots Defendants' other objections regarding evidence of presentment as such evidence would be irrelevant.

2.  Defendants objected to Plaintiff s presentation of evidence on attorney's fees to the Court arguing that Plaintiff's application for attorney's fees requested fees solely under TEX. CIV. PRAC. & REM. CODE $ 38.001. The Court OVERRULES that objection because the pleadings properly allege attorney's fees under more than one statute, and Defendants had fair notice of Plaintiffs. pleadings on attorney's fees. Moreover, before Plaintiffs filed the Application for Attorney's Fees, the parties agreed in open court that they would submit the issue of attorney's fees to the Court after the jury verdict.

The Court, having heard and considered all of the above, is of the opinion that Plaintiff's Motion for Judgment should be GRANTED and attorney's fees should be awarded to Plaintiff under TEX. PROP. CODE § 53.156 AND TEX. CIV. PRAC. & REM. CODE § 12.002.

## Defendants' Cross-Claims

With respect to Defendants Lyon Properties & Custom Homes, LLC d/b/a Lyon Construction Services and Ted B. Lyon, III's claims for breach of contract against Plaintiff Building Galveston, Inc. the Court ENTERS JUDGMENT in favor of Plaintiff Building Galveston, Inc. and against Defendants Lyon Properties & Custom Homes, LLC d/b/a Lyon Construction Services and Ted B. Lyon, III. Defendants Lyon Properties & Custom Homes, LLC d/b/a Lyon Construction Services and Ted B. Lyon, III shall TAKE NOTHING by those claims.

## Plaintiff's Breach of Contract Claims

With respect to Plaintiff Building Galveston, Inc.'s claim against Defendants Lyon Properties & Custom Homes, LLC d/b/a Lyon Construction Services and Ted B. Lyon, III for breach of contract; based on the jury's verdict the Court ENTERS JUDGMENT in favor of Plaintiff Building Galveston, Inc. against Defendant Ted B. Lyon, III. It is ADJUDGED that Plaintiff Building Galveston, Inc. shall, recover from Defendant Ted B. Lyon, III, actual damages in the principal amount of $15,889.84.

## Plaintiff's Fraudulent Lien Claim

With respect to Plaintiff Building Galveston, Inc.'s claim against Defendants Lyon Properties & Custom Homes, LLC d/b/a Lyon Construction Services and Ted B. Lyon, III for liability under § 12.002 of the Texas Civil Practice & Remedies Code for filing a fraudulent lien, based on the jury's verdict, the Court ENTERS JUDGMENT in favor of Plaintiff Building Galveston, Inc. against Defendant Ted B. Lyon, III. It is ADJUDGED that Plaintiff Building Galveston, Inc. shall, recover from Defendant Ted B. Lyon, III, actual damages in the amount of $31,930.75.

100

## Plaintiff's Claims for Filing an Invalid Lien

With respect to Plaintiff Building Galveston, Inc.'s claim against Defendants Lyon Properties & Custom Homes, LLC d/b/a Lyon Construction Services and Ted B. Lyon, III under § 53.156 of the Texas Property Code for filing an invalid lien, based on the jury's verdict, the Court ENTERS JUDGMENT in favor of Plaintiff Building Galveston, Inc. and against Defendant Ted B. Lyon, III. It is ADJUDGED that Plaintiff Building Galveston, Inc. shall, recover from Defendant Ted B. Lyon, III, costs and reasonable attorney's fees as set forth below.

## Plaintiff's Claims for Attorney's Fees

The Court finds that Building Galveston, Inc., is entitled to recover attorney's fees on the causes of action for fraudulent lien and invalid lien, as to which it obtained favorable answers in the Jury's verdict.

- The Court finds that reasonable and necessary attorney's fees for fraudulent lien and invalid lien are $142,556.42.

## Judgment

It is therefore ADJUDGED that Building Galveston, Inc., Plaintiff, recover from Defendant Ted B. Lyon Judgment for actual damages in the amount of $47,820.59.

It is further ADJUDGED that Building Galveston, Inc., Plaintiff, recover from Defendant Ted B. Lyon, III Judgement for pre-judgment interest on the actual damages in the amount of $9,806.50.

It is further ADJUDGED that Building Galveston, Inc., Plaintiff, recover from Defendant Ted B. Lyon, III, attorney's fees in the amount of $142,556.42.

## Attorney's Fees on Appeal

~~The Court finds that Plaintiff Building Galveston, Inc. will incur further attorney's fees in~~ the event that Defendants appeal this judgment to the court of appeals and the Texas Supreme Court.

- The Court finds that in the event Defendant Ted B. Lyon, III takes an unsuccessful appeal to the Court of Appeals, Plaintiff will incur an additional $20,000.00 in attorney's fees.

- The Court finds that in the event Defendant Ted B. Lyon, III files a Petition for Review in the Texas Supreme Court following an unsuccessful appeal, Plaintiff will incur an additional $10,000.00 in attorney's fees.

- ~~The Court finds that in the event the Texas Supreme Court requests briefing on the merits~~ Plaintiff will incur an additional $10,000.00 in attorney's fees.

- The Court finds that in the event oral argument is requested by the Texas Supreme Court, ~~Plaintiff will incur an additional $7,500.00 in attorney's fees.~~

It is therefore further ADJUDGED that Building Galveston, Inc,, Plaintiff, recover from Defendant Ted B. Lyon, III:

- the additional sum of $20,000.00 as attorney's fees in the event that Defendant Ted B. Lyon, III takes an unsuccessful appeal to the Court of Appeals;

- ~~the additional sum of $10,000.00 as attorney's fees in the event that Defendant Ted B.~~ Lyon, III files a Petition for Review to the Texas Supreme Court that is denied;

- the additional sum of $10,000.00 as attorney's fees in the event that Defendant Ted B. Lyon, III's Petition for Review to the Texas Supreme Court is denied after briefing on the merits is requested by the Court; and

- the additional sum of $7,500.00 as attorney's fees in the event that Defendant Ted B. Lyon, III's Petition for Review to the Texas Supreme Court is denied after oral argument in the Texas Supreme Court

It is further ADJUDGED that Building Galveston, Inc., Plaintiff, recover from Defendant Ted B. Lyon, III its costs of court herein; and that this Judgment shall bear interest at the statutory rate of five percent (5%) per annum on the total amount of the Judgment from the date of this Judgment until paid.

It is ORDERED that Plaintiff shall have all writs of execution and other process necessary to enforce this judgment.

This judgment corrects the Judgment of May 19, 2015, finally disposes of all parties and all claims, and is appealable. Any relief requested by any party not granted herein is hereby DENIED.

SIGNED and ORDERED entered on _October 13_____, 2015.

_____
Hon. Michelle M. Slaughter, District Judge